Filed 6/20/18

# CERTIFIED FOR PUBLICATION

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

### SECOND APPELLATE DISTRICT

### DIVISION SEVEN

| In re | No. B286241 |
|---|---|
| | (Los Angeles County |
| ANTUAN WILLIAMS | Super. Ct. No. PA002551) |
| | |
| on Habeas Corpus. | |

ORIGINAL PROCEEDING.  Petition for writ of habeas corpus.  Relief granted.

Tracy Lum for Petitioner.

Xavier Becerra, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Lance E. Winters, Senior Assistant Attorney General, Shawn McGahey Webb, Supervising Deputy Attorney General and Jill Vander Borght, Deputy Attorney General for Respondent.

———————————

On December 29, 2016, the Board of Parole Hearings found Petitioner Antuan Williams suitable for parole under the youth offender provisions of Penal Code sections 3051 and 4801, subdivision (c). Although that decision became final on April 24, 2017, Williams was not released but required to serve an additional consecutive, eight-year term for a conviction he sustained while in prison when he was 26 years old. Williams argues that the Board's decision requiring him to serve the consecutive term after he was granted parole was unlawful. We agree.

## FACTUAL BACKGROUND

In 1991, Williams, then age 21, was convicted of first degree murder under Penal Code section 187 and sentenced to an indeterminate prison term of 28 years to life.[1] In 1996, while serving his sentence, Williams pleaded guilty to battery on a non-prisoner (§ 4501.5), for which he was sentenced to an eight year consecutive term to be served after the completion of his life term. (§ 1170.1, subd. (c); *In re Thompson* (1985) 172 Cal.App.3d 256 (*Thomson*).)

On December 29, 2016, Williams became eligible for a youth offender parole hearing. (§§ 3051 and 4801, subd. (c).) The Board found him suitable for parole, concluding that "Mr. Williams does not pose an unreasonable risk of danger to society or a threat to public safety." The panel observed that Williams was still required to serve a consecutive eight year term for his 1996 in-prison offense, the so-called *Thompson* term. On May 1, 2017, the Board sent Williams a notice that his release date had been updated to August 25, 2022.

---

[1] Unless otherwise noted, all further statutory citations are to the Penal Code.

2

Williams filed a petition for writ of habeas corpus in Los Angeles County Superior Court, arguing that he was in custody unlawfully and should be released because he had been granted youth offender parole. The trial court denied the petition on October 3, 2017, holding that because Williams was 26 years old when he pleaded guilty to the in-prison battery offense, he was required under section 1170.1, subdivision (c) and *Thompson* to serve the consecutive term.

Williams filed a petition for writ of habeas corpus in this court on November 13, 2017, asserting that, under the terms of the youth offender parole statute, he was entitled to release on April 24, 2017.

## DISCUSSION

The legal question presented by this petition is whether a youth offender granted parole under section 3051 is required to serve a consecutive sentence for an in-prison offense committed after age 25.

### A. The Youth Offender Parole Process

The Legislature adopted section 3051 in response to a seminal series of cases in which the United States Supreme Court and the California Supreme Court recognized that "children are constitutionally different from adults for purposes of sentencing" because, due to their "diminished culpability and greater prospects for reform, . . . 'they are less deserving of the most severe punishments.'" (*Miller v. Alabama* (2012) 567 U.S. 460, ____, [132 S.Ct. 2455, 2464, 183 L.Ed.2d 407] (*Miller* ), quoting *Graham v. Florida* (2010) 560 U.S. 48, 68, 130 S.Ct. 2011, 176 L.Ed.2d 825 (*Graham*); *People v. Caballero* (2012) 55 Cal.4th 262 (*Caballero*).) The Eighth Amendment's prohibition on cruel and unusual punishment "encompasses the 'foundational

3

principle' that the 'imposition of a State's most severe penalties on juvenile offenders cannot proceed as though they were not children.' (*Miller*, [at p.] \_\_\_\_ [132 S.Ct. at p. 2466].) From this principle, the high court has derived a number of limitations on juvenile sentencing: (1) no individual may be executed for an offense committed when he or she was a juvenile (*Roper v. Simmons* (2005) 543 U.S. 551, 578 [125 S.Ct. 1183, 161 L.Ed.2d 1]); (2) no juvenile who commits a nonhomicide offense may be sentenced to LWOP (*Graham, supra,* 560 U.S. at p. 74 [130 S.Ct. 2011]); and (3) no juvenile who commits a homicide offense may be automatically sentenced to LWOP (*Miller*, at p. \_\_\_\_ [132 S.Ct. at p. 2460])." [Citation.]" (*In re Trejo* (2017) 10 Cal.App.5th 972, 980 (*Trejo*).)

In response to these constitutional mandates, section 3051, the youth offender statute, provides an inmate convicted of a "controlling offense" committed before he or she was 25 years of age, a parole hearing that provides "a meaningful opportunity to obtain release." (§§ 3051, subd. (d), (e), (f)(1).) As the Legislature explained: "The purpose of this act is to establish a parole eligibility mechanism that provides a person serving a sentence for crimes that he or she committed as a juvenile the opportunity to obtain release when he or she has shown that he or she has been rehabilitated and gained maturity, in accordance with the decision of the California Supreme Court in *Caballero* and the decisions of the United States Supreme Court in *Graham v. Florida* and *Miller v. Alabama. . . .* It is the intent of the Legislature to create a process by which growth and maturity of youthful offenders can be assessed and a meaningful opportunity for release established." (Stats. 2013, ch. 312 (Sen. Bill No. 260), § 1.)

In 2016, the California Supreme Court decided *People v. Franklin* (2016) 63 Cal.4th 261, 277-278 (*Franklin*), which addressed the impact of section 3051 on otherwise mandatory sentencing provisions. The California Supreme Court held that "[s]ections 3051 and 3046 have thus superseded the statutorily mandated sentences of inmates who, like Franklin, committed their controlling offense before the age of 18." Franklin, who was convicted of first degree murder and sentenced to a mandatory indeterminate term of 50 years to life, argued that the state scheme requiring that sentence constituted cruel and unusual punishment under *Miller*'s prohibition against mandatory life without parole sentences for juveniles. The high court held that sections 3051 and 4801 mooted the constitutional claims by overriding the mandatory sentences and offering Franklin "a meaningful opportunity to obtain release." (*Id.* at p. 278 [citing § 3051, subd. (e)].) According to the high court, section 3051 "thus reflects the Legislature's judgment that 25 years is the maximum amount of time that a juvenile offender may serve before becoming eligible for parole." (*Ibid.*)

### B. In re Trejo *on Habeas Corpus*

The specific question before us, the interplay between the youth offender parole statute and the earlier enacted section 1170.1, was addressed in *In re Trejo* (2017) 10 Cal.App.5th 972 (*Trejo*).) Following extensive analysis, the *Trejo* court concluded that a youth offender granted parole under section 3051 was not required to serve a consecutive term for an in-prison offense. (*Trejo*, *supra*, 10 Cal.App.5th at pp. 980-989.)

Gilbert Trejo was convicted of second degree murder and sentenced to 15 years to life when he was 17 years old. While

5

incarcerated in San Quentin, Trejo was convicted of assault with a deadly weapon on a peace officer (§ 245) and possession of a deadly weapon by a prisoner (§ 4502). After serving 35 years in prison, Trejo was found suitable for parole as a youth offender under section 3051. The Board, however, determined that pursuant to section 1170.1, subdivision (c),[2] Trejo was required to serve an additional consecutive four-year term for offenses he committed in prison.

Trejo filed a petition for a writ of habeas corpus, arguing that because he was 20 years old when he committed his in-prison offense, section 1170.1, subdivision (c) did not apply to him, and he was entitled to release at the end of his indeterminate sentence pursuant to section 3051, subdivision (d). The Court of Appeal agreed, concluding that "section 3051 supersedes section 1170.1 when a youth offender is consecutively sentenced to a life term and a determinate term." (*Trejo*, *supra*, 10 Cal.App.5th at p. 986.) Citing *Franklin*, *Trejo* expressly rejected the argument, also made by respondent in this case, that nothing in the language of sections 3051 or 3046 exempts youth

---

**2**     Penal Code Section 1170.1, subdivision (c): "In the case of any person convicted of one or more felonies committed while the person is confined in the state prison or is subject to reimprisonment for escape from custody and the law either requires the terms to be served consecutively or the court imposes consecutive terms, the term of imprisonment for all the convictions that the person is required to serve consecutively shall commence from the time the person would otherwise have been released from prison. If the new offenses are consecutive with each other, the principal and subordinate terms shall be calculated as provided in subdivision (a). This subdivision shall be applicable in cases of convictions of more than one offense in the same or different proceedings."

6

offenders from the plain terms of section 1170.1, subdivision (c), requiring an inmate to serve a determinate term imposed for an in-prison offense following an inmate's completion of an indeterminate life term. *Trejo* explained that "[t]his statutory scheme, designed to effectuate the constitutional prohibition against excessive punishment of youthful offenders, would be thwarted if a youth offender found suitable for parole pursuant to section 3051 was required to remain in custody due to a consecutive sentence for an in-prison offense." (*Id.* at p. 987.)

1. The Operation of The Statute

Describing the operation of the statute, the *Trejo* court found that section 3051 applies to offenses committed before a youth offender is incarcerated as well as offenses committed by a youth offender in prison. The court explained that section 3051 "provides for parole suitability review for inmates whose 'controlling offense' was committed before he or she was 23 years old." (*Trejo, supra,* 10 Cal.App.5th at p. 984 [citing § 3051, subd. (a)(1)].)[3] "Controlling offense" is defined in the statute as "the offense or enhancement for which any sentencing court imposed the longest term of imprisonment." (§ 3051, subd. (a)(2)(B).) *Trejo* concluded that "the Legislature indicated its intent that the

---

[3]     When adopted in 2013, the youth offender statute applied only to those under age 18 at the time of their offense. In 2015, the Legislature amended each of the Penal Code provisions to make them applicable to those under 23 at the time of their offense. (*Franklin, supra,* 63 Cal.4th at p. 277 [citing Stats. 2015, ch. 471].) In 2017, the age limit was changed to 25 by an amendment that became effective on January 1, 2018. (Stats. 2017, ch. 675.)

7

controlling offense . . . be selected from *all* sentences imposed upon that offender . . . . Nothing in section 3051 suggests the only sentences to be considered are those imposed before the offender was incarcerated, as long as the controlling offense—the one for which the longest sentence was imposed—was committed before the offender was 23 years old." (*Trejo, supra,* at pp. 984-985.) As a result, if an in-prison offense requires the longest prison term imposed on a juvenile, it will be rendered the controlling offense under section 3051.

### 2. The Legislatively Mandated Exemptions

The exceptions set out in subdivision (h) of section 3051 also address the application of the statute to in-prison convictions. Section 3051 excludes five categories of juvenile offenders. It excludes persons sentenced under section 1170.12, section 667, subdivisions (b) through (i), and section 666.61. It further excludes persons sentenced to life without the possibility of parole for controlling offenses committed after age 18. Finally, it excludes a person who would otherwise qualify, "but who, subsequent to attaining 26 years of age, commits an additional crime for which malice aforethought is a necessary element of the crime or for which the individual is sentenced to life in prison. (§ 3051, subd. (h).)

Significantly, the Legislature failed to include sentences imposed under 1170.1, subdivision (c) in the list of enumerated exceptions contained in subsection (h), either in the initial enactment or in any of the subsequent amendments. Instead, as noted by the court in *Trejo,* the structure of the enactment demonstrates that the Legislature intended section 3051 to supersede sentences for in-prison offenses not expressly

8

enumerated in the statute.  (*Trejo, supra,* 10 Cal.App.5th at p. 985.)

The final sentence of subdivision (h) excludes from early parole consideration those who "subsequent to attaining 26 years of age" commit "an additional crime for which malice aforethought is a necessary element of the crime or for which the individual is sentenced to life in prison."  (§ 3051, subd. (h).)  This specific exception in the statute limits the exclusion to those who commit the specified offenses.  In concluding that in situations not subject to a specified exclusion, section 3051 supersedes section 1170.1, subdivision (c), *Trejo* invoked the statutory maxim of construction, "*expressio unius est exclusio alterius,* if exemptions are specified in a statute, [a court] may not imply additional exemptions unless there is a clear Legislative intent to the contrary."  (*Id.* at p. 983.)

Respondent, however, urges us to read *Trejo* and section 3051, subdivision (h) more restrictively, arguing that the Legislature intended section 3051, subdivision (h), and the statute as whole, to proscribe an inmate's eligibility for parole, not an inmate's eligilibity for release.  But this interpretation contradicts the plain text of section 3051, subdivision (d), which provides:  "At the youth offender parole hearing, the board shall release the individual on parole . . . ."  (§ 3051, subd. (d).)  Section 3051, subdivision (b)(3), similarly states that if a youth offender commits the controlling offense at age 25 or under, he "shall be eligible for release on parole by the board . . . ."  (§ 3051, subd. (b)(3).  The mandatory language clearly indicates that the entitlement awarded by section 3051 is not limited to a finding of suitability for parole, but extends to release.

### 3. The Administrative Interpretation

Next, *Trejo* examined the website of the Department of Corrections and Rehabilitation (Department) and found that it, too, conformed to the court's view that the Legislature intended section 3051 to supplant section 1170.1 for youth offenders. (*Trejo*, at p. 985.) Citing to the flow chart entitled "How to Determine Whether an Inmate Qualifies as a 'Youth Offender' under PC § 3051," published on the Department's website, the court recounted the analysis required as described by the Department itself. (*Ibid.*) *Trejo* determined that the Department's own website is consistent with the court's understanding that inmates convicted of in-prison crimes not specifically enumerated in section 3051, subdivision (h) qualify for release as youth offenders.[4] (*Trejo*, *supra*, 10 Cal.App.5th at p. 985.)

### 4. The Application of *In re Tate*

Furthermore, the *Trejo* court rejected the argument that petitioner's consecutive *Thompson* sentence must be served under *In re Tate* (2006) 135 Cal.App.4th 756, 765 (*Tate*). *Tate*, which

---

[4] The Department's flow chart lays out a series of five questions to determine whether an inmate qualifies as a youth offender under section 3051. According to the flowchart, unless the in-prison crime involved malice aforethought or required a life term, the inmate does qualify for a youth offender parole hearing under section 3051. (https://www.cdcr.ca.gov/BOPH/docs/YOPH/FLOWCHART%20-%20How%20to%20Determine%20Whether%20an%20Inmate%20Qualifies%20as%20a%20Youth%20Offender.pdf [as of June 20, 2018.])

10

was decided in the context of calculating an inmate's work time credits, determined that a consecutive term for an in-prison offense does not merge with an inmate's original term but is treated as a separate principal term. (*Id.* at 765.) As a result, the defendant in *Tate*, who was sentenced to an additional term of two years for a crime committed in prison, was entitled to accrue worktime credits at the standard rate rather than the reduced rate that had applied to his original sentence because it was a violent felony. The court held that because he was no longer serving time for a violent offense, he was not subject to the prior limitation. (*Ibid.*) Using *Tate*, respondent in *Trejo* attempted to argue that the defendant was required to serve the additional sentence for his in-prison offense because it was treated as a new principal term that could not be credited against an indeterminate term. Rejecting this argument, *Trejo* explained, "[h]owever reasonable this argument may be in a case not subject to section 3051, it ignores both the underlying purpose and the text of the youth offender parole statute. The parole eligibility date determined under section 3051, as we have said, is based on the longest sentence imposed upon the inmate by 'any' sentencing court, 'supersed[ing] the statutorily mandated sentences' of the youth offenders to whom sections 3051 and 3046 apply." (*Trejo*, *supra*, 10 Cal.App.5th at p. 988 [quoting *Franklin, supra*, 63 Cal.4th 261].)

  5. The Windfall Argument

  Finally, the *Trejo* court rejected respondent's argument that failing to apply section 1170.1 subdivision (c) would provide youth offenders with a windfall. The court explained there was no windfall because the Board would necessarily take in-prison

11

offenses into account in determining the degree of risk an inmate posed to the public and the extent of a youth offender's growth and maturity. (*Trejo*, *supra*, 10 Cal.App.5th at p. 988.)

In sum, *Trejo* examined the plain text of the juvenile offender parole statute, the purpose of the statute, and the Department's own website describing the operation of the statute and concluded that a youth offender found suitable for release on parole pursuant to section 3051, was not required, before being released, to serve a consecutive sentence imposed for a crime he committed in prison at age 20. (*Trejo*, *supra*, 10 Cal.App.5th at p. 975.)

### C. *Williams Is Entitled to be Released on Parole*

#### 1. Trejo *Compels the Conclusion that Williams Be Released on Parole*

Discussing section 3051, *Trejo* explained, "[t]his statutory scheme, designed to effectuate the constitutional prohibition against excessive punishment of youthful offenders, would be thwarted if a youth offender found suitable for parole pursuant to section 3051 was required to remain in custody due to a consecutive sentence for an in-prison offense." (*Trejo*, at p. 987.)

Respondent argues that the reasoning of *Trejo* does not apply to Williams because he was no longer a juvenile when he committed the in-prison offense of battery. We disagree. While footnote 7 in *Trejo* states that the opinion does not address the application of section 1170.1, subdivision (c) to youth offenders who commit in-prison crimes at age 26 or older, that issue was not before the court. *Trejo*'s reasoning, however, adheres with equal force here. *Trejo*'s examination of the plain text of section 3051 in concert with its legislative purpose persuades us that

12

section 3051 overrides sentences for all in-prison offenses not expressly excluded by operation of the statute.  The opinion's language and reasoning provide a cogent understanding of the legislative scheme and its constitutional mandate, and support the conclusion that the age at which the juvenile offender commits the in-prison offense is not a disqualifying factor.  We agree with *Trejo*'s analysis and extend it to the facts here.

A more recent Court of Appeal decision agrees as well.  (*In re Jenson*, 2018 Cal.App.LEXIS 527 (Second Appellate District, Division Three, June 6, 2018) (*Jenson*).)  In *Jenson,* the court held that a youth offender granted parole was not required to serve a consecutive five-year term for an in-custody offense committed when he was age 29.  The court explained: "while *Trejo*'s holding necessarily is limited to its facts, we discern nothing in the court's thoughtful statutory analysis that would not apply equally to defendants who commit in-prison crimes as adults." (*Id.* at p.*17.)

Finally, Respondent's contrary interpretation raises grave constitutional concerns.  If accepted, Respondent's view would deprive youthful offenders such as Williams of the meaningful opportunity to obtain release from prison required in *Franklin,* an opportunity that allows a proper balance in sentencing that is consistent with the constitutional limits prescribed by the United States Supreme Court and the Califorinia Supreme Court.  We decline to interpret section 3051 in a fashion that gives rise to potential constitutional issues.  (*Frye v. Tenderloin Housing Clinic, Inc.* (2006) 38 Cal.4th 23, 42–43, 129 P.3d 408, 419 [holding that statutes are interpreted so as to avoid the conclusion that the Legislature intended to enact an unconstitutional statute]; *Korea Supply Co. v. Lockheed Martin*

13

*Corp.* (2003) 29 Cal.4th 1134, 1146 [presuming that the Legislature does not intend to enact unconstitutional provisions]; see also *Ashwander v. Valley Authority* (1936) 297 U.S. 288, 348, [56 S.Ct. 466, 80 L.Ed. 688]; *People v. Davenport* (1985) 41 Cal.3d 247, 264 [construing statutory language so as to avoid serious constitutional questions].)

As discussed above, subsection (h) of section 3051 excludes inmates who are convicted of in-prison offenses after reaching age 26 from the benefits of the statute only if their additional crime has as a necessary element malice aforethought or is a crime for which the sentence is life in prison. No other adult in-prison crimes are listed as disqualifying an inmate from the benefits of section 3051; this court may not infer additional exemptions not enumerated. Because Williams was convicted of the in-prison crime of battery—which neither includes malice as an element, nor is punished by a term of life in prison—after reaching age 26, the statute provides him relief, and he cannot be required to serve the additional eight-year term.

### 2. *Williams Is Suitable for Release on Parole*

On December 29, 2016, the Board conducted Williams' juvenile offender parole hearing and found Williams suitable for release. The Board explained that because Williams was 21 years old when he committed the commitment offense, it gave "great weight to the diminished culpability of juveniles as compared to adults, the hallmark features of youth, and any subsequent growth and maturity in reviewing an inmate's suitability for parole pursuant to Penal Code section 3041.5." The Board stated that it "look[ed] at the fact that 25 years have passed and many of the circumstances that tend to show

14

suitability pursuant to Title 15, Section 2402, Subdivision (d) are present in this case." The Board was "satisfied that [Williams] had shown signs of remorse and accepted responsibility for [his] crime." They also stated: "We did look at your disciplinary record and we took into consideration your lack of violence-related infractions since 2000 and we observed the upward trend, the positive trend in self-discipline and self-control." Having considered Williams' controlling offense, his disciplinary record, Williams' age of incarceration, 21, and present age, 48, they also concluded the probability of recidivism was reduced. Although the Board cautioned Williams at the end of the hearing that "[j]ust keep in mind this is a tentative decision and you've got a *Thompson* term I think you have to serve[,]" it was clear that the Board had considered Williams in-prison conviction in deciding that "Williams would not pose a potential threat to public safety."

This demonstrates that Williams' commission of an in-prison crime was expressly considered in the parole decision. As explained in *Trejo*: "It is obvious, however, that in considering a youth offender's suitability for parole release, commission of an in-prison offense after age 23 would weigh against finding the inmate had rehabilitated and gained maturity so as to warrant release pursuant to section 3051." (*Trejo, supra*, 10 Cal.App.5th at p. 987, fn. 7.) We agree with the principle that section 3051 renders a person's *Thompson* offense a factor to be considered by the Board, even though it will not result in a consecutive sentence that must be served before release. Any other reading of section 3051 would thwart its legislative purpose.

The Board in Williams' case weighed his in-prison offense in the manner described and nonetheless found Williams suitable for parole. Requiring him to serve an additional eight-year term

15

would undermine the purpose of section 3051 and its constitutional underpinnings. Based on these principles, we conclude that Williams was entitled to release when his parole became effective on April 24, 2017, despite the consecutive eight-year term imposed for his in-prison conviction in 1996.

   3. *Williams' Period of Parole Must Be Reduced by the Amount of Time He Has Served Since Being Found Suitable for Release*

Williams asserts that he is entitled to have his period of supervised release reduced by the amount of time he has been in prison after he was found suitable for parole on April 24, 2017. The petitioner in *Trejo* made the same argument Williams makes here. There, the court concluded that because the parole provisions of section 3051 superseded petitioner's otherwise statutorily mandated sentences, "[p]etitioner's continued confinement to serve the consecutive sentence imposed under section 1170.1, subdivision (c), was not lawful in the circumstances of this case, and he is entitled to credit against his parole period." (*Trejo*, *supra*, 10 Cal.App.5th at p. 991.) The same is true in this case.

## DISPOSITION

Relief is granted.  Respondent is ordered to amend petitioner's release date to April 24, 2017, to release petitioner on parole, and to deduct from his parole period the days of incarceration served beyond that date.

Good cause appearing, this decision shall be final as to this court in five days.  (Cal. Rules of Court, rule 8.387(b)(3)(A).)


ZELON, J.


We concur:


PERLUSS, P. J.


FEUER, J.[*]

---

[*] Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.