Filed 2/25/21

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE

| In re JOHNNIE HOZE on Habeas Corpus. | A158399 |
|---|---|
| | (Marin County Super. Ct. No. SC207139A) |

When Johnnie Hoze was 67 years old, and after he had served nearly four decades in state prison on an indeterminate life sentence, the Board of Parole Hearings ("Board") found him suitable for parole under the Elderly Parole Program (Pen. Code, § 3055).[1]  Before he could be released, however, the Board determined that Hoze must serve additional sentences for two offenses he committed in prison, consistent with section 1170.1, subdivision (c) (hereafter, section 1170.1(c)).  Hoze filed a habeas corpus petition alleging he was entitled to immediate release under the Elderly Parole Program.  The trial court granted the petition.  We agree with the trial court: Hoze is not required to serve his sentences for in-prison offenses because a grant of parole under section 3055 supersedes section 1170.1(c).  We affirm.

---

[1] Undesignated statutory references are to the Penal Code.

1

## BACKGROUND

### A.

Hoze began serving an indeterminate life sentence in 1980, after he was convicted of attempted kidnapping, assault with a deadly weapon, robbery, vehicle theft, oral copulation, kidnapping with intent to commit robbery, and battery by means of force and violence. While incarcerated, he was convicted of weapon possession in 1981 and again in 1987. Hoze was sentenced to two additional, consecutive prison terms, known as *Thompson* terms, for the in-prison offenses—three years for the first conviction, and one year for the second. (See *In re Thompson* (1985) 172 Cal.App.3d 256 (*Thompson*); § 1170.1(c).)

In 2018, the Board granted Hoze parole under the Elderly Parole Program. The Board considered the nature and gravity of Hoze's offenses, including the in-prison weapons violations. It concluded that based on "the positive adjustments you've made over the last decade for sure . . . it was our opinion that based on the positives that you no longer pose a risk of danger to society." While in prison, Hoze participated in vocational training and self-help programs including Alcoholics Anonymous and Narcotics Anonymous, and he received positive work reports from prison staff. The Board explained, "[t]here's no question in our mind that today as you present in front of us you have matured and that you have grown" and that "your current age of 67 does reduce your recidivism risk."

Although the parole decision became final on September 4, 2018, Hoze was not released immediately because the Board concluded that his parole grant did not excuse him from serving his *Thompson* terms.

**B.**

The Elderly Parole Program originated in 2014 as part of a court-ordered remedy for the state's failure to provide adequate medical care and mental health care to prison inmates as a result of overcrowding, in violation of the Eighth Amendment. (See *Brown v. Plata* (2011) 563 U.S. 493, 499-500; see also *In re Butler* (2018) 4 Cal.5th 728, 736-737 (*Butler*).) To further reduce the prison population, a federal court ordered the state to implement what became the Elderly Parole Program. In 2018, the Legislature codified the program in section 3055. (Stats. 2017, ch. 676, § 3 (Assem. Bill No. 1448 (2017 Reg. Sess.)).) Its "main purpose was to curb rising medical costs of the geriatric inmate population and to provide a 'compassionate' release for those elderly individuals." (*People v. Contreras* (2018) 4 Cal.5th 349, 374-375.)

Originally, the program was intended to "review[] the parole suitability of any inmate who is 60 years of age or older and has served a minimum of 25 years of continuous incarceration on his or her current sentence, serving either a determinate or indeterminate sentence." (Stats. 2017, ch. 676, § 3 (Assem. Bill No. 1448 (2017 Reg. Sess.)).) Effective January 1, 2021, the Legislature expanded the program to inmates who are at least 50 years of age and have served a minimum of 20 years of continuous incarceration on their current sentence. (See Stats. 2020, ch. 334, § 2 (Assem. Bill No. 3234 (2020 Reg. Sess.)); § 3055, subd. (a).)

When considering the release of an inmate, the Board gives special consideration to "whether age, time served, and diminished physical condition, if any, have reduced the elderly inmate's risk for future violence." (§ 3055, subd. (c).) If the Board finds the inmate suitable for parole, it is required to "release the individual on parole as provided in Section 3041." (§ 3055, subd. (e).) Section 3041, in turn, directs that "[u]pon a grant of parole,

3

the inmate shall be released subject to all applicable review periods" – referring to the period in which the governor may reverse a grant of parole or request further review. (See §§ 3041, subd. (a)(4), 3041.1, 3041.2.)

Despite being found suitable for parole, the Board required Hoze to serve his *Thompson* terms before being released. Over three decades before the enactment of section 3055, *Thompson* held that section 1170.1(c) requires an inmate to begin serving a consecutive term for an in-prison felony on the date the inmate otherwise would have been released on parole. (*Thompson, supra,* 172 Cal.App.3d at pp. 260-261, 263; § 1170.1(c) [providing that for in-prison felonies, "the term of imprisonment for all the convictions that the person is required to serve consecutively shall commence from the time the person would otherwise have been released from prison"]; see also *In re Coleman* (2015) 236 Cal.App.4th 1013, 1022 ["Commencing the consecutive sentence for the custodial offense on the date the prisoner otherwise actually would have been released on parole is consistent with the Legislature's intent to punish and deter criminality in prison."].)

## DISCUSSION

The issue here is whether the Elderly Parole Program (§ 3055) overrides the requirement, under section 1170.1(c), that an inmate must serve his *Thompson* term when he would otherwise be released on parole. In its briefs, the Board argued that the program does not override section 1170.1(c). At oral argument, the Board informed us that, in light of the recent legislative amendments to the program (discussed further below), it has modified its position. While the Board does not concede defeat, it agrees that Hoze's position is reasonable, and it looks to this court for guidance on the issue.

4

We hold that a parole grant pursuant to section 3055 overrides section 1170.1(c).  Hoze is not required to serve his *Thompson* terms.

**A.**

The Legislature appeared to model the Elderly Parole Program on a parole program for youth offenders, codified at section 3051.  Several courts of appeal have concluded that the Youth Offender Parole Program supersedes the *Thompson* requirement.  (See *In re Trejo* (2017) 10 Cal.App.5th 972, 984 (*Trejo*); *In re Williams* (2018) 24 Cal.App.5th 794, 799-804 (*Williams*); *In re Jenson* (2018) 24 Cal.App.5th 266, 278-283 (*Jenson*).)  We will briefly summarize the youth program legislation and the relevant cases.

When originally enacted, the Youth Offender Parole Program was intended to provide an opportunity for parole to prisoners who had committed their offenses as juveniles and had served between 15 and 25 years in prison, depending on the offense.  (*People v. Franklin* (2016) 63 Cal.4th 261, 277 (*Franklin*); Stats. 2013, ch. 312, § 4 (Sen. Bill No. 260 (Reg. Sess. 2013)).)  The program was designed to bring juvenile sentencing into conformity with a series of cases holding that it violates the Eighth Amendment's prohibition on cruel and unusual punishment to sentence a juvenile offender to death, or to life without parole for a nonhomicide crime.  (*Franklin, supra,* 63 Cal.4th at p. 277; see also *Graham v. Florida* (2010) 560 U.S. 48, 74-75; *Roper v. Simmons* (2005) 543 U.S. 551, 573-574; *People v. Caballero* (2012) 55 Cal.4th 262, 268.)  The Legislature has twice amended section 3051 to extend eligibility beyond juvenile offenders—in 2015, it extended eligibility to offenders under age 24 (Stats. 2015, ch. 471, § 1 (Sen. Bill No. 261 (Reg. Sess. 2015))), then in 2017 to offenders under age 26.  (Stats. 2017, ch. 675, §  1 (Assem. Bill No. 1308 (2017 Reg. Sess.)).)

For youth offenders granted parole under section 3051, the statute overrides their original, statutorily mandated sentences. As our Supreme Court explained in *Franklin*, section 3051 effectuates "the Legislature's determination that inmates such as Franklin, despite the mandatory character of their original sentences, are now entitled to a youth offender parole hearing during their 25th year of incarceration." (*Franklin, supra,* 63 Cal.4th at p. 279.) "[S]ection 3051 has changed the manner in which the juvenile offender's original sentence operates by capping the number of years that he or she may be imprisoned before becoming eligible for release on parole. The Legislature has effected this change by operation of law, with no additional resentencing procedure required." (*Id.* at pp. 278-279.)

In 2017, another division of this court held that a parole grant under section 3051 overrides *Thompson* terms for inmates who committed in-prison offenses as juveniles. (*Trejo, supra*, 10 Cal.App.5th at p. 984.) After a thorough analysis of the interplay between section 3051 and various sentencing laws, the *Trejo* court concluded that the Youth Offender Parole Program necessarily supersedes the *Thompson* requirement, as it does other sentencing requirements not expressly excluded by section 3051. (*Id.* at pp. 981-990.)

In 2018, two courts held that paroled youth offenders are entitled to release even if they received additional sentences for in-prison crimes as adults; both courts agreed with and extended *Trejo*'s analysis. (See *Williams, supra*, 24 Cal.App.5th at pp. 799-804; *Jenson, supra*, 24 Cal.App.5th at pp. 278-283.) Notably, *Jenson* held that the plain meaning of the term "release" in section 3051 means release from incarceration, not release from punishment for some sentences but continued incarceration for *Thompson*

terms.  (*Jenson*, *supra*, 24 Cal.App.5th at p. 283; see also *Williams*, 24
Cal.App.5th at p. 801.)

The Legislature enacted the Elderly Parole Program in 2017, several
months after *Trejo* was decided.  (Stats. 2017, ch. 676, § 3 (Assem. Bill No.
1448 (2017 Reg. Sess.)).)  Since *Trejo*, and as recently as last year, the
Legislature has amended both section 3055 and section 3051 without
indicating any disagreement with *Trejo*, *Williams*, or *Jenson*; indeed, it has
*broadened* both programs to apply to more prisoners.  (See Stats. 2020, ch.
334, § 2 (Assem. Bill No. 3234 (2020 Reg. Sess.)); Stats. 2017, ch. 675, § 1
(Assem. Bill No. 1308 (2017 Reg. Sess.)); Stats. 2017, ch. 684, § 1.5 (Sen. Bill
No. 394 (2017 Reg. Sess.)).)  We assume the Legislature was aware of, and
agreed with, the judicial construction of the youth parole statute.  (*Jenson*,
*supra*, 24 Cal.App.5th at pp. 280-281.)

We now turn to the legislative intent of the elderly parole statute.

## B.

Statutory construction requires our independent review.  (*People v.
Tran* (2015) 61 Cal.4th 1160, 1166.)  In construing section 3055, our task is to
ascertain the Legislature's intent, starting with the statute's words and
giving those words their ordinary meaning.  (*Moran v. Murtaugh Miller
Meyer & Nelson, LLP* (2007) 40 Cal.4th 780, 783 (*Moran*).)  We consider not
only the language of the entire statutory scheme but also the text of related
statutes, and we harmonize them if possible.  (*People v. Gonzalez* (2017) 2
Cal.5th 1138, 1141.)

Two rules are especially important in this case.  First, we presume that
the Legislature " ' was aware of existing related laws ' " when it enacted
section 3055 and "that it 'intended to maintain a consistent body of rules.' "
(*In re R.G.* (2019) 35 Cal.App.5th 141, 146 (*R.G.*).)  Second, when " '

7

legislation has been judicially construed and a subsequent statute on the same or an analogous subject uses identical or substantially similar language, we may presume that the Legislature intended the same construction, unless a contrary intent clearly appears. ' " (*Moran*, *supra*, 40 Cal.4th at p. 785, quoting *Estate of Griswold* (2001) 25 Cal.4th 904, 915-916; see also *R.G.*, *supra*, 35 Cal.App.5th at p. 146.)

These rules apply here. The Legislature apparently looked to the Youth Offender Parole Program (§ 3051) as a model for the Elderly Parole Program (§ 3055). Despite some differences that logically reflect each program's respective focus on the inmate's young age at the time of the crime (§ 3051, subds. (a)(1), (a)(2)(B); § 4801, subd. (c)) or the inmate's old age after serving a long sentence (§ 3055, subds. (a), (c)), both programs address a similar subject: they authorize early release from incarceration for the targeted subset of inmates who have served a specified number of years in prison and are found suitable for parole. (See § 3051, subd. (a), (b); § 3055, subd. (a).) Both programs do so by the same mechanism: they leave prisoners' existing sentences in place but cap the number of years that a prisoner may be imprisoned before becoming eligible for parole. (See *Franklin*, *supra*, 63 Cal.4th at pp. 278-279; see also *Butler*, *supra*, 4 Cal.5th at p. 740.) The mechanism allows the Board to release the prisoner on parole, superseding statutorily mandated sentences, without any resentencing procedure. (See *Franklin*, *supra*, 63 Cal.4th at pp. 278-279.) Both programs modify the Board's existing parole review process with additional factors tailored to each program. (See § 3051, subd. (f)(1); § 4801, subd. (c); § 3055, subd. (c).) In both programs, if the Board does not grant parole, it must schedule a subsequent parole hearing unless the prisoner is released earlier. (See § 3051, subd. (g); § 3055, subd. (f).) Both programs set

8

schedules for the Board to complete parole reviews of eligible prisoners. (See § 3051, subd. (i); § 3051.1; § 3055, subd. (j).)

Further, the Legislature amended sections 3041 and 3046 to add references to elderly parolees alongside existing references to youthful offenders. (See § 3041, subd. (a)(4) ["Upon a grant of parole, the inmate shall be released subject to all applicable review periods. However, an inmate shall not be released before reaching his or her minimum eligible parole date as set pursuant to Section 3046 unless the inmate is eligible for earlier release pursuant to his or her *youth offender parole eligibility date or elderly parole eligible date.*"], italics added; § 3046, subd. (c) ["an inmate found suitable for parole *pursuant to a youth offender parole hearing as described in Section 3051 or an elderly parole hearing as described in Section 3055* shall be paroled regardless of the manner in which the board set release dates pursuant to subdivision (a) of Section 3041"], italics added; Stats. 2017, ch. 676, §§ 1-2 (Assem. Bill No. 1448 (2017 Reg. Sess.)).)

Of particular interest to us, the programs follow the same approach in the ways they address—and don't address—the statutorily mandated sentences that the Board is authorized to override. Neither program lists the sentencing statutes that are affected by a parole grant, but both programs necessarily include determinate as well as indeterminate sentences. (See *Trejo*, *supra*, 10 Cal.App.5th at pp. 984-986; § 3051, subd. (b)(1); § 3055, subd. (a).) Both programs list specific types of offenses that are excluded from the program; neither specifies section 1170.1(c) among the exclusions. (See § 3051, subd. (h); § 3055, subds. (g), (h); *Trejo*, *supra*, 10 Cal.App.5th at pp. 982, 985; *Williams*, *supra*, 24 Cal.App.5th at pp. 800-801.) Notably, the Legislature excluded from both programs two mandatory sentencing statutes that, like section 1170.1(c), require the prisoner to begin serving a

consecutive term when the prisoner "would otherwise have been released from prison." (§§ 1170.12, subd. (c)(2)(B), 667, subd. (e)(2)(B); see § 3051, subd. (h); § 3055, subd. (g).) We must assume the Legislature intentionally omitted section 1170.1(c) from the list of excluded sentencing statutes. (*Sierra Club v. State Bd. of Forestry* (1994) 7 Cal.4th 1215, 1230 ["Under the maxim of statutory construction, *expressio unius est exclusio alterius,* if exemptions are specified in a statute, we may not imply additional exemptions unless there is a clear legislative intent to the contrary."]; see also *Williams*, *supra*, 24 Cal.App.5th at pp. 800-801.)

Finally, both statutes use the same language and procedure for releasing a prisoner upon a grant of parole. If the Board decides to grant parole, it "shall release the individual on parole as provided in Section 3041." (§ 3051, subd. (d); § 3055, subd. (e).) *Jenson* construed the plain meaning of the word "release" in section 3051 to mean release from prison. (See *Jenson*, 24 Cal.App.5th at p. 283; see also *Williams*, *supra*, 24 Cal.App.5th at p. 801.) We see no indication that the Legislature intended "release" to have a different meaning for purposes of section 3055; to the contrary, section 3055, subdivision (b)(1) expressly defines " 'elderly parole eligible date' " to mean the date an elderly offender is eligible to be "released from *prison*." (Italics added.) Moreover, since *Jenson*, the Legislature has amended both statutes without suggesting any disagreement. (Stats. 2019, ch. 577, § 2 (Assem. Bill No. 965 (Reg. Sess. 2019)) [amending § 3051]; Stats. 2020, ch. 334, § 2 (Assem. Bill No. 3234 (2020 Reg. Sess.)) [amending § 3055].) Indeed, the Legislature expanded the Elderly Parole Program to allow the release of more prisoners. (Stats. 2020, ch. 334, § 2 (Assem. Bill No. 3234 (2020 Reg. Sess.)) [lowering the eligibility threshold to 50 years or older and 20 years of incarceration]; § 3055, subd. (a).].) We assume the Legislature understood

10

*Jenson*'s construction of the word "release" and intended it to have the same meaning in both statutes. (See *R.G.*, *supra*, 35 Cal.App.5th at p. 151.)

In short, the Legislature intended to authorize the Board to supersede *Thompson* terms pursuant to section 1170.1(c) when it grants parole to elderly prisoners under section 3055, consistent with the similar Youth Offender Parole Program. Following the most recent amendments to the statutes, the Board now agrees this conclusion is reasonable. We need not address its earlier arguments that differences in the statutes suggest a contrary intent. In any case, we have considered those arguments and reject them.

## DISPOSITION

The trial court's order granting Hoze's petition for a writ of habeas corpus and directing his release is affirmed.

_____
BURNS, J.

We concur:

_____
NEEDHAM, ACTING P.J.

_____
SELIGMAN, J.*

A158399

_____
* Judge of the Superior Court of Alameda County, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

Marin County Superior Court, Case No. SC207139A

Trial Judge:  The Honorable Kelly V. Simmons

Law Office of Marc Eric Norton, Marc Eric Norton, for Petitioner.

Xavier Becerra, Attorney General, Phillip J. Lindsay, Senior Assistant Attorney General, Sara J. Romano, Supervising Deputy Attorney General, and Jennifer G. Ross, Deputy Attorney General, for Respondent-Appellant.