DHANIDINA, J.*
*271 In 1979, when Ronald Jenson was 19 years old, he committed first degree felony murder, for which he was convicted and sentenced to 25 years to life, plus two years. During his first nine years of incarceration, Jenson committed three additional in-prison crimes, for which he was convicted and sentenced. But, for the last almost 30 years, he has remained crime-free.
In 2016, the Board of Parole Hearings (the Board) found Jenson suitable for release on parole at a youth offender parole hearing conducted under Penal Code [1] section 3051. However, the California Department of Corrections and Rehabilitation (CDCR) did not release Jenson, and instead ordered him to serve an additional sentence for his in-prison offenses.
Jenson has petitioned this court for a writ of habeas corpus, urging that he is being illegally held. We agree, and thus we order his release.
*272 BACKGROUND
A. Jenson's Felony Murder Conviction and Subsequent In-Prison Felonies
In 1979, when Jenson was 19 years old, he committed first degree felony murder, for which he was convicted and sentenced to 25 years to life, plus two years for firearm use. (§§ 187, subd. (a), 12022.5, subd. (a).)[2]
While he was incarcerated, Jenson was convicted of three in-prison felonies: prison escape and possession of a weapon, in 1980 when Jenson was 21 years old (§§ 4530, 4502); and assault with a deadly weapon on a peace officer, in 1989 when he was 29 years old (§ 245, subd. (b) ). Pursuant to section 1170.1, subdivision (c) (hereafter, section 1170.1(c) ), Jenson was sentenced to three additional consecutive prison terms, known as " Thompson terms,"[3] for the in-prison offenses: sixteen months for the escape, one year for the weapon possession, and five years for the assault with a deadly weapon.
Jenson is now 58 years old. He has not committed a crime since 1989, and he has not been disciplined for a "serious rule violation" in more than 17 years.[4]
*871 B. Youth Offender Parole Hearing; Grant of Parole
Jenson became eligible for parole in 1997. He was denied parole four times between 1997 and 2014. At his fifth hearing in 2014,[5] the Board recommended parole, but the Governor reversed the Board's decision.[6]
In 2013, the Legislature passed Senate Bill No. 260, which, among other things, added *273 section 3051 to the Penal Code. Section 3051 entitles certain prisoners who committed "controlling offenses" under the specified age of eligibility to youth offender parole hearings and to a "meaningful opportunity for release."
In 2016, the Board conducted a youth offender parole hearing and once again found Jenson suitable for release. In announcing its suitability determination, the Board noted several factors that weighed against suitability, namely that Jenson had committed "an atrocious and cruel act" that "resulted in the death of a human being;" had been convicted of three additional in-prison offenses; had "amassed some 48 115s [CDCR disciplinary reports]," some of which were "serious and violent, stabbing people, spitting on staff, fighting with inmates, attempting to stab staff, possession of weapons;" and had never admitted participating in the commitment offense.[7] Notwithstanding these factors, the Board found Jenson suitable for parole: "[W]e know ... those are things now in the rearview, and in a distant rearview for you. Given that you've been incarcerated 37 years and stayed violation-free for now some 17 years, that's a chunk of time that you've distanced yourself from that other human being-[¶] ... [¶]-that you were. And it was in fact, a different human being[,] because we see an individual that is soft-spoken, insightful, reflective here today. ... You were a mere 19 years old when you committed this life crime. A lot of the factors of [Senate Bill No. 260] are applied here ... [including] your childhood of being [in] foster care and molestations, not believing or not trusting adults, leading to the way your thought process worked back then. So, and now you're almost to the age of elderly parole, that's how much time you served in prison. So the age in and of itself does reduce the recidivism rates. But I think more to do with that is how you changed your mannerisms, how you changed your philosophy and life since the time in ... [1989], where you reflected that act almost took another human being's life. Since your incarceration, you have in the last about 20 years let's say, have had positive work assignments, positive performance ratings .... You received your GED in 2000, vocational training in graphic arts and janitorial. You *872 have been involved in numerous self-help and self-study programs ... [and] you were able to verbalize and demonstrate why you did what you did, what changes you have made throughout the years, and what tools you have garnered to safeguard against *274 repeating those past mistakes." Thus, the Board found Jenson no longer posed a risk of danger to society and was suitable for parole.
C. Jenson's Continued Incarceration
Despite the Board's suitability finding, the CDCR did not release Jenson, but instead required him to serve his Thompson term.[8] The CDCR has calculated that his earliest possible release date is December 11, 2018, and his maximum release date is September 9, 2021.
Jenson sought a writ of habeas corpus from the superior court, which found that section 1170.1(c) mandated he serve his Thompson term for the 1989 assault. Jenson filed a petition for writ of habeas corpus in this court, and we issued an order to show cause.
CONTENTIONS
The dispute over Jenson's release date implicates two different provisions of the Penal Code: (1) section 1170.1(c), which governs sentences for in-prison felonies; and (2) section 3051, which gives individuals sentenced for certain crimes committed under the age of 26 a "meaningful opportunity for release" from prison after serving 15, 20, or 25 years.
Jenson contends that the two statutory provisions are fundamentally inconsistent as they apply to him. He therefore urges that section 3051-as the later-enacted and more specific statute-necessarily supersedes section 1170.1(c). The Attorney General disagrees, contending that the two statutes are not fundamentally inconsistent, and so both must be given effect.
As we now discuss, we conclude that sections 3051 and 1170.1(c) are irreconcilable as they apply to a youth offender who commits an additional crime in prison after the age of 26, because section 3051, which specifically addresses youth offenders, dictates that the youth offender be immediately released upon being found suitable for parole. In contrast, section 1170.1(c) would require the same youth offender to serve any applicable Thompson term even after being found suitable for release. Because section 3051 is both later-enacted and more specific, we conclude that section 3051 supersedes section 1170.1(c). Therefore, Jenson need not serve his Thompson term and is entitled to be released from prison.
*275 I.
Principles of Statutory Interpretation and Standard of Review
We begin by outlining the principles that govern our review. "We review questions of statutory construction de novo. Our primary task 'in interpreting a statute is to determine the Legislature's intent, giving effect to the law's purpose. [Citation.] We consider first the words of a statute, as the most reliable indicator of legislative intent. [Citation.]' [Citation.] We construe the statute's words in context, harmonizing statutory provisions to avoid absurd results. [Citation.] If the statutory text is susceptible to more than one reasonable construction, we may consider extrinsic aids such as legislative history to facilitate our interpretative analysis." ( *873 California Building Industry Assn. v. State Water Resources Control Bd. (2018) 4 Cal.5th 1032, 1041, 232 Cal.Rptr.3d 64, 416 P.3d 53.)
Wherever reasonably possible, a court must " ' "harmonize statutes, reconcile seeming inconsistencies in them, and construe them to give force and effect to all of their provisions." ' " ( State Dept. of Public Health v. Superior Court (2015) 60 Cal.4th 940, 955, 184 Cal.Rptr.3d 60, 342 P.3d 1217.) " ' " 'Accordingly, they "must be read together and so construed as to give effect, when possible, to all the provisions thereof." ' " ' " ( Ibid . ) However, "the requirement that courts harmonize potentially inconsistent statutes when possible is not a license to redraft the statutes to strike a compromise that the Legislature did not reach." ( Id. at p. 956, 184 Cal.Rptr.3d 60, 342 P.3d 1217.) Thus, if the statutory language compels the conclusion that the statutes are in conflict, "one must be interpreted as providing an exception to the other." ( Ibid . ) "The rules we must apply when faced with two irreconcilable statutes are well established. 'If conflicting statutes cannot be reconciled, later enactments supersede earlier ones [citation], and more specific provisions take precedence over more general ones [citation].' ( Collection Bureau of San Jose v. Rumsey (2000) 24 Cal.4th 301, 310 [99 Cal.Rptr.2d 792, 6 P.3d 713] ( Rumsey ).)" ( State Dept. of Public Health , at p. 960, 184 Cal.Rptr.3d 60, 342 P.3d 1217 ; see also People v. Adelmann (2018) 4 Cal.5th 1071, 1079, 232 Cal.Rptr.3d 421, 416 P.3d 786.)
With these principles in mind, we turn to the language of the statutes at issue.
*276 II.
The Statutory Scheme
A. Section 1170.1
Section 1170.1, enacted in 1976, governs consecutive terms of imprisonment. As is relevant here, subdivision (c) provides that when a prisoner is sentenced to a consecutive term for a felony committed in state prison, "the term of imprisonment for all the convictions that the person is required to serve consecutively shall commence from the time the person would otherwise have been released from prison." For prisoners serving indeterminate terms, the consecutive sentence for in-prison offenses begins on the date the prisoner is found suitable for parole, not the date he or she completes his base term. ( In re Coleman (2015) 236 Cal.App.4th 1013, 1016-1022, 186 Cal.Rptr.3d 922.)
B. Section 3051
In a series of cases, our high courts have recognized that "children are constitutionally different from adults for purposes of sentencing" because of their diminished culpability and greater prospects for reform. ( Miller v. Alabama (2012) 567 U.S. 460, 471, 132 S.Ct. 2455, 183 L.Ed.2d 407.) Hence, the Eighth Amendment's prohibition on cruel and unusual punishment has been held to prohibit imposition of the death penalty on juveniles ( Roper v. Simmons (2005) 543 U.S. 551, 125 S.Ct. 1183, 161 L.Ed.2d 1 ); life without possibility of parole (LWOP) on juveniles who commit nonhomicide offenses ( Graham v. Florida (2010) 560 U.S. 48, 130 S.Ct. 2011, 176 L.Ed.2d 825 ); mandatory LWOP on juveniles ( Miller , supra , 567 U.S. 460, 132 S.Ct. 2455 ); de facto LWOP on juvenile nonhomicide offenders ( People v. Caballero (2012) 55 Cal.4th 262, 145 Cal.Rptr.3d 286, 282 P.3d 291 ); and a sentence of 50 years to life for juvenile nonhomicide offenders ( People v. Contreras (2018) 4 Cal.5th 349, 356, 229 Cal.Rptr.3d 249, 411 P.3d 445 ).
In line with this evolution in how we think about and treat youth offenders, our Legislature enacted Senate Bill No. 260 in 2013 to implement the limitations on juvenile sentencing articulated in these cases.
*874 In adopting Senate Bill No. 260, which added section 3051 and amended sections 3041, 3046, and 4801, the Legislature explained that "youthfulness both lessens a juvenile's moral culpability and enhances the prospect that, as a youth matures into an adult and neurological development occurs, these individuals can become contributing members of society." (Stats. 2013, ch. 312, § 1.) Thus, the bill's purpose was "to establish a parole eligibility mechanism that provides a person serving a sentence for crimes that he or she committed as a *277 juvenile the opportunity to obtain release when he or she has shown that he or she has been rehabilitated and gained maturity." (Ibid. )
To this end, section 3051 provides that an offender who committed a "controlling offense" as a youth is entitled to a "youth offender parole hearing" after a fixed period of years set by statute. The "controlling offense" is "the offense or enhancement for which any sentencing court imposed the longest term of imprisonment." ( § 3051, subd. (a)(2)(B).)
As originally enacted, section 3051 applied only to non-LWOP offenses committed before the offender was 18 years old. (Stats. 2013, ch. 312 (S.B. 260), § 4.) An amendment effective January 1, 2016 raised the age of eligibility to 23 years; and an amendment effective January 1, 2018 raised the age of eligibility to 25 years and included LWOP offenses committed before age 18. (Stats. 2015, ch. 471 (S.B. 261), § 1; Stats. 2017, ch. 675 (A.B. 1308), § 1; Stats. 2017, ch. 684 (S.B. 394), § 1.5.) Thus, section 3051 now provides that an offender who committed a "controlling offense" under the age of 26 is entitled to a "youth offender parole hearing" during his 15th year of incarceration if he received a determinate sentence; during his 20th year of incarceration if he received a life term of less than 25 years to life; and during his 25th year of incarceration if he received a term of 25 years to life. ( § 3051, subd. (b)(1)-(3).) An offender convicted of a controlling offense committed before the age of 18 for which he was sentenced to LWOP is entitled to a youth offender parole hearing during his 25th year of incarceration. ( § 3051, subd. (b)(4).)
The statute defines a youth offender parole hearing as "a hearing by the Board of Parole Hearings for the purpose of reviewing the parole suitability of" youth offenders. ( § 3051, subd. (a)(1).) At the hearing, the Board is required to afford the youth offender "a meaningful opportunity to obtain release," taking into consideration "the diminished culpability of youth as compared to that of adults, the hallmark features of youth, and any subsequent growth and increased maturity of the individual." In an appropriate case, the Board "shall release the individual on parole as provided in Section 3041."[9] ( § 3051, subds. (d), (e), (f)(1).)
Section 3051 excludes several categories of youth offenders: offenders sentenced under the Three Strikes law (§§ 667, subds. (b)-(i), 1170.12); sex offenders sentenced under Jessica's Law (§ 667.61); offenders sentenced to LWOP for controlling offenses committed after age 18; and individuals to *278 whom the section would otherwise apply, "but who, subsequent to attaining 26 years of age, commit[ ] an additional crime for which malice aforethought is a *875 necessary element of the crime or for which the individual is sentenced to life in prison." ( § 3051, subd. (h).)
In sum, section 3051 applies to someone who (1) commits a controlling offense when he or she is under the statutory age of eligibility, and (2) does not fall under one of the exclusions in subdivision (h).
C. Application of These Statutes to Jenson
It is undisputed that Jenson was sentenced to a consecutive term for a felony committed while he was in state prison, within the meaning of section 1170.1(c). It also is undisputed that Jenson committed his controlling offense when he was 19 years old and does not come within any of the exceptions to section 3051 -that is, he is not a third striker or a sex offender, was not sentenced to LWOP, and did not after age 26 commit a malice aforethought or life crime. ( § 3051, subd. (h).) As such, he unquestionably was entitled to a youth offender parole hearing under section 3051 and was eligible for parole on his commitment offense.
The question before us, therefore, is whether having been granted parole, Jenson must serve his Thompson term before being released from prison, as directed by section 1170.1(c), or is entitled to immediate release from prison, as directed by section 3051. We turn to that issue.
III.
Section 3051 Supersedes Section 1170.1 With Regard to Youth Offenders Who Commit In-Prison Crimes As Adults
A. In re Trejo
Only one published case, In re Trejo (2017) 10 Cal.App.5th 972, 216 Cal.Rptr.3d 855 ( Trejo ), has considered the interaction between sections 1170.1(c) and 3051 as they apply to youth offenders who commit crimes in prison. In that case, defendant Trejo committed second degree murder at age 17, for which he was convicted and sentenced to a prison term of 15 years to life. At age 20, he committed an assault with a deadly weapon on a peace officer while incarcerated. He was sentenced to an additional term of four years, to be served consecutively to his life sentence. ( Id . at pp. 975-976, 216 Cal.Rptr.3d 855.)
After 35 years in prison, the Board found Trejo suitable for parole under section 3051. However, it determined that under section 1170.1(c), Trejo *279 could not be released until he served his four-year Thompson term for the in-prison assault. ( Trejo , supra , 10 Cal.App.5th at pp. 975-976, 216 Cal.Rptr.3d 855.) Trejo filed a petition for writ of habeas corpus, challenging the legality of his continued confinement. The trial court denied the petition; Trejo then filed a petition with the Court of Appeal, which granted relief. ( Id . at pp. 976, 991-992, 216 Cal.Rptr.3d 855.)
In granting relief, the appellate court rejected the Attorney General's argument that section 3051 applies only to sentences imposed for crimes committed prior to incarceration, concluding that the text of the statute "indicates the opposite." The court explained: " Section 3051 provides for parole suitability review for inmates whose 'controlling offense' was committed before he or she was 23 years old.[10 ]( § 3051, subd. (a)(1).) As we have said, 'controlling offense' is defined as 'the offense or enhancement for which any sentencing court imposed the longest term of imprisonment.' ( § 3051, subd. (a)(2)(B), italics added.)
*876 ... By referring to the longest term of imprisonment imposed by 'any' sentencing court, the Legislature indicated its intent that the controlling offense used to determine a youth offender's parole hearing date under section 3051 be selected from all sentences imposed upon that offender, regardless of whether they were imposed in one or a number of proceedings or cases. 'Any sentencing court' is open-ended: Nothing in section 3051 suggests the only sentences to be considered are those imposed before the offender was incarcerated ...." ( Trejo , supra , 10 Cal.App.5th at pp. 984-985, 216 Cal.Rptr.3d 855.)
The court also agreed with Trejo that the Legislature's intent to exempt youth offenders from application of section 1170.1 is inherent in section 3051. It explained that section 1170.1, subdivision (a), "requires that an inmate serve the requisite term for each consecutively sentenced offense and enhancement. Under section 3051, subdivision (b)(1), however, a youth offender sentenced to a determinate term becomes eligible for release in the 15th year of incarceration even if he or she has not yet served the aggregate determinate term. Where a youth offender is sentenced to a lengthy determinate term, then, section 3051 necessarily overrides the requirement of section 1170.1 that an inmate sentenced to consecutive terms not be released on parole before completing all the terms of imprisonment imposed.
"Similarly, section 3051 supersedes section 1170.1 when a youth offender is consecutively sentenced to a life term and a determinate term. Section 1170.1, subdivision (a), incorporates section 669, which provides that when a person is sentenced to a life term and a consecutive determinate term, 'the determinate term of imprisonment shall be served first and no part *280 thereof shall be credited toward the person's eligibility for parole as calculated pursuant to Section 3046 or pursuant to any other section of law that establishes a minimum period of confinement under the life sentence before eligibility for parole.' Under section 3051, however, a person sentenced to a life term and a determinate term becomes eligible for parole after the time specified in section 3051, subdivision (b)(2) or (3), based on the life term, without regard to the determinate term. [Citation.]
"We see no basis for inferring that the Legislature intended section 3051 to override the otherwise applicable provisions section 1170.1 as described above but to have no effect on the application of section 1170.1, subdivision (c)." ( Trejo , supra , 10 Cal.App.5th at p. 986, 216 Cal.Rptr.3d 855.)[11]
Finally, the court noted that Trejo had committed his controlling offense at age 17, and that none of the exceptions in section 3051, subdivision (h) applied to him because "[h]e was not sentenced pursuant to the Three Strikes law or section 667.61 or to a term of life in prison without possibility of parole, and his in-prison offense was committed before he reached 23 years of age [the then-operative age of eligibility] and neither involved malice aforethought nor resulted in a life sentence." ( *877 Trejo , supra , 10 Cal.App.5th at p. 982, 216 Cal.Rptr.3d 855.) The court thus concluded that Trejo was entitled to release when his parole became effective, notwithstanding the consecutive four-year term imposed for the in-prison conviction. ( Id . at p. 989, 216 Cal.Rptr.3d 855.)
B. Trejo's Reasoning Applies Equally to Youth Offenders Who Commit In-Prison Crimes As Adults
Both parties appear to concede that Trejo is controlling law with regard to youth offenders who commit in-prison offenses under the age of 26. We agree. No published case has disagreed with Trejo 's holding, and although the Legislature amended section 3051 after Trejo was decided, it did not make any changes relevant to in-prison offenses. Indeed, the only change the Legislature has made to section 3051 since Trejo was decided was to broaden the statute's reach by increasing the age of eligibility, not to narrow it. We thus presume that the Legislature was aware of, and acquiesced in, the court's construction of the statute. (See, e.g., People v. Ledesma (1997) 16 Cal.4th 90, 100-101, 65 Cal.Rptr.2d 610, 939 P.2d 1310 [" 'When a statute has been *281 construed by the courts, and the Legislature thereafter reenacts that statute without changing the interpretation put on that statute by the courts, the Legislature is presumed to have been aware of, and acquiesced in, the courts' construction of that statute.' "].)
The Attorney General contends, however, that Trejo should not govern the present case because its "holding relies on Legislative intent and policy supporting leniency for youthful offenders that should not extend to sentences for adult in-prison crimes." Not so. The Court of Appeal's analysis in Trejo , which we have discussed at length above, was grounded in the language of the relevant statutes. And, while Trejo 's holding necessarily is limited to its facts, we discern nothing in the court's thoughtful statutory analysis that would not apply equally to defendants who commit in-prison crimes as adults.
C. Sections 1170.1 and 3051 Cannot Be Harmonized With Regard to Youth Offenders Who Commit In-Prison Offenses As Adults
Our conclusion that Trejo 's reasoning applies equally to the present facts is, without more, a sufficient basis for holding that Jenson need not serve his Thompson term. But there is another, equally convincing reason to reach this result-namely, that it is compelled by the language of section 3051, subdivision (h), which specifically addresses youth offenders who commit additional in-prison crimes after age 26 .
Section 3051, subdivision (h) provides: "This section shall not apply to an individual to whom this section would otherwise apply, but who, subsequent to attaining 26 years of age, commits an additional crime for which malice aforethought is a necessary element of the crime or for which the individual is sentenced to life in prison." In enacting section 3051, therefore, the Legislature anticipated that some youth offenders would commit additional crimes after the age of 26,[12] and it specifically provided when such offenses will cause youth offenders to lose the opportunity for early release-i.e., if (1) malice aforethought is a necessary element of the crime, or (2) the crime is punished by life in prison.
*878 Under the principle of "expressio unius est exclusio alterius ," an express exclusion from the operation of a statute "indicates the Legislature intended no other exceptions are to be implied. ( Wildlife Alive v. Chickering (1976) 18 Cal.3d 190, 195, 132 Cal.Rptr. 377, 553 P.2d 537 ; see also 2A Sutherland, Statutory Construction, supra , § 47.23, p. 123; 58 *282 Cal.Jur.3d, supra , § 115.)" ( Strang v. Cabrol (1984) 37 Cal.3d 720, 725, 209 Cal.Rptr. 347, 691 P.2d 1013.) As applied here, this principle suggests that the Legislature intended a youth offender who commits a crime in prison after age 26 to remain eligible for release from prison after serving 15, 20, or 25 years so long as the in-prison crime was not a "malice aforethought" crime and was not punishable by life in prison.
Section 3051, subdivision (h) thus is irreconcilably in conflict with section 1170.1(c) with regard to youth offenders who, after age 26, commit in-prison crimes for which malice aforethought is not a necessary element and which are not punishable by life in prison. As the present case illustrates, section 1170.1 would require such a person to serve an additional term for the in-prison crime after being paroled on the principal term. In contrast, section 3051 would require his or her immediate release upon a finding of parole suitability.
Sections 1170.1(c) and 3051 also result in entirely different parole hearing dates for some youth offenders who commit crimes in prison. Consider a hypothetical youth offender who, at the age of 18, commits a crime for which he is sentenced to five years in state prison. During his first year of his incarceration, he commits an additional crime and receives a consecutive sentence of 25 years to life. Because the in-prison crime is a Thompson offense, the two terms must be served consecutively under section 1170.1(c), and thus the prisoner will not become parole eligible until he has been incarcerated for 30 years (5 years plus 25 years, without considering credits). Because the in-prison crime is also the controlling offense, however, under section 3051, the prisoner would be parole eligible during his 25th year of incarceration. ( § 3051, subd. (b)(3) ["A person who was convicted of a controlling offense that was committed when the person was 25 years of age or younger and for which the sentence is a life term of 25 years to life shall be eligible for release on parole by the board during his or her 25th year of incarceration at a youth offender parole hearing, unless previously released or entitled to an earlier parole consideration hearing pursuant to other statutory provisions."].)
As we have said, where two statutes cannot be reconciled, " 'later enactments supersede earlier ones [citation], and more specific provisions take precedence over' the more general." ( People v. Adelmann , supra , 4 Cal.5th at p. 1079, 232 Cal.Rptr.3d 421, 416 P.3d 786.) Here, section 3051 was adopted in 2013 and specifically addresses parole eligibility for youth offenders. Section 1170.1 was adopted many decades earlier and generally concerns punishment for in-prison crimes, without distinguishing between youth and adult offenders. Because section 3051 thus is both later-enacted and more specific, it supersedes section 1170.1(c) with regard to youth offenders.
*283 The dissent suggests there is no conflict between sections 1170.1(c) and 3051 because a defendant can be "paroled" on one crime but still be required to serve an additional sentence for another. But distinguishing between "parole" and "release" is contrary to the Legislature's express purpose in enacting section 3051-to give a youth offender "the opportunity to obtain release when he or she has shown that he or she has been rehabilitated and gained *879 maturity." (Stats. 2013, ch. 312, § 1, italics added.) The distinction also is contrary to the plain language of sections 3051 and 3041, which state that a youth offender parole hearing "shall provide for a meaningful opportunity to obtain release ;" the Board "shall release " an offender it determines eligible for parole; and on "a grant of parole, the inmate shall be released ." ( §§ 3051, subds. (d), (e), 3041, subd. (a)(4), italics added.)
Nothing in section 3051 indicates "release" means release on just the controlling offense so that the prisoner can serve a Thompson term. Rather, "release" plainly means "release from incarceration." Interpreting "release" in this manner accords with the commonsense, plain meaning of the word. (See, e.g., Merriam-Webster's Collegiate Dict. (10th ed. 1995) p. 987 [release means "to set free from restraint, confinement, or servitude" or "relieve from something that confines, burdens, or oppresses"].) It also accords with the Legislature's stated intent in enacting Senate Bill No. 260-to give youth offenders a meaningful opportunity to obtain release when they reach rehabilitative benchmarks.[13]
For all of these reasons, we conclude that section 3051 supersedes section 1170.1(c) with regard to youth offenders who commit in-prison offenses as adults.
D. Our Interpretation of Section 3051 Does Not Give Youth Offenders a "Free Pass" to Commit Crimes in Prison
Our interpretation of section 3051 does not give defendants a "free pass" to commit crimes in prison without consequence, as the dissent suggests. Because "serious misconduct in prison" is a parole suitability factor, parole will likely be denied or significantly delayed for a defendant who has committed an in-prison crime. (See Cal. Code Regs., tit. 15, § 2402, subd. (c)(6) ["serious misconduct in prison" is a factor tending to indicate "unsuitability for release"].)[14] Adding an additional Thompson term to a defendant's sentence thus punishes a youth offender sentenced to an indeterminate term *284 twice for in-prison offenses, because it can repeatedly delay a grant of parole and then add an additional prison term after parole is granted.
Consider Jenson's case. Jenson committed his controlling offense, which led to his incarceration, when he was 19, an age our Legislature has deemed of "diminished culpability." (§ 4801, subd. (c).) He was sentenced to 25 years to life for the murder, plus two years for the enhancement; for his in-prison offenses, he received an additional term of five years. By the time he was found suitable for parole in 2016, he had served in excess of 37 years-more than the mandatory determinate parts of his sentence-and had been denied parole five times, in large part because of "[his] record in prison," including "three [in-prison] convictions" and "some 48 [disciplinary reports]." In short, the Board (and the Governor) were well aware of Jenson's in-prison conduct, and explicitly took that conduct into account in granting him parole. Requiring a youth offender like Jenson who has met the stringent benchmarks *880 required for rehabilitation to remain incarcerated to serve a Thompson term turns section 3051 into a Pyrrhic victory: Jenson is suitable for release having demonstrated maturity and rehabilitation, but he must remain in prison.
Moreover, no windfall results to Jenson and to similarly situated persons. While the specific outcome in this case is Jenson's release on parole, the general implication of our decision is not a wholesale release of prisoners. Our decision merely means that youth offenders who commit nonlife crimes or crimes for which malice aforethought is not an element while in prison after attaining the age of 26 are still entitled to a youth offender parole hearing and to a meaningful opportunity for release. A hearing and an opportunity . Nothing more. At that hearing, the Board will evaluate the prisoner holistically-any Thompson crimes being part of the whole. Such crimes may militate against a grant of parole. (See also Trejo , supra , 10 Cal.App.5th at p. 988, 216 Cal.Rptr.3d 855.) Our decision thus does not encourage bad behavior in prison. The youth offender who continues to commit crimes while incarcerated only sabotages the chance of a good outcome at his or her parole hearing. A youth offender parole hearing offers a meaningful opportunity for release. It is not a guarantee of one.
DISPOSITION
Jenson is ordered released on parole. His release date shall be amended to be September 9, 2016, and the days of incarceration he has served since that day shall be deducted from his parole period. In the interests of justice, this *285 opinion shall be deemed final immediately upon filing. ( Cal. Rules of Court, rule 8.387(b)(3)(A).)
I CONCUR:
EDMON, P. J.

Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

All further undesignated statutory references are to the Penal Code.

The jury also found Jenson guilty of two counts of attempted robbery and found true firearm enhancements. The court imposed but stayed sentences on those counts.

In re Thompson (1985) 172 Cal.App.3d 256, 260, 218 Cal.Rptr. 192, held that when a court imposes consecutive terms for felonies committed while a felon is confined in a state prison, "such terms shall commence from the time such person would otherwise have been released from prison."

Jenson did receive "counseling chronos" in 2007 (for ignoring an order to "return to the single line"); 2009 (for refusing to answer a supervisor's question); and 2010 (for failing to show identification in the chow hall).

The 2014 parole hearing does not appear to have been held under section 3051 or to have considered the factors in that section.

A decision of the Board finding an inmate suitable for parole becomes final as to the Board within 120 days of the date of the hearing. (§ 3041, subd. (b).) The Governor then has 30 days to reverse or to modify the Board's parole decision. (§ 3041.2, subds. (a), (b).)

As the dissent notes, at the 2016 parole hearing, Jenson denied committing the 1979 murder. Jenson admitted, however, that he stabbed and "almost killed" an officer in 1989. It was the realization that he could have taken a life that caused him to begin addressing his anger. Moreover, Jenson readily admitted that he had committed a variety of crimes before his 1980 conviction, and that had he not been incarcerated, he "most likely ... would have continued" to "commit crimes." Accordingly, the Board noted that while Jenson had "denied the [commitment crime,] which [was his] right to do," he had admitted his "antisocial and tumultuous social history," including a lengthy juvenile record, and had not "minimize[d] [his] criminality in the past."

According to the Attorney General, Jenson's remaining term has been recalculated to reflect only the five-year Thompson term for the in-custody offense committed in 1989.

Section 3041 concerns parole release dates. Subdivision (a)(4) of that section provides, "Upon a grant of parole, the inmate shall be released subject to all applicable review periods. However, an inmate shall not be released before reaching his or her minimum eligible parole date as set pursuant to Section 3046 unless the inmate is eligible for earlier release pursuant to his or her youth offender parole eligibility date."

As noted, until January 1, 2018, section 3051 applied to offenders who committed their controlling offenses before age 23. As of January 1, 2018, the age of eligibility has been raised from 23 to 26.

Indeed, our California Supreme agreed that section "3051 and 3046 have thus superseded the statutorily mandated sentences of inmates" who committed their controlling offenses before the age of 26. (People v. Franklin (2016) 63 Cal.4th 261, 278, 202 Cal.Rptr.3d 496, 370 P.3d 1053 ; see Trejo , supra , 10 Cal.App.5th at p. 989, 216 Cal.Rptr.3d 855 ["Respondent maintains that the Board's consideration of suitability factors is insufficient because it is not 'the sentence contemplated by the sentencing courts, prosecutors, or the Penal Code.' But this is true of all sentences affected by section 3051"].)

As Trejo noted, such crimes necessarily will be committed in prison, since the earliest eligibility for parole under section 3051 is during the 15th year of incarceration, long after a youth offender will have reached age 26. (Trejo , supra , 10 Cal.App.5th at p. 985, 216 Cal.Rptr.3d 855.)

This phrase-meaningful opportunity to obtain release-has its genesis in Graham v. Florida , supra , 560 U.S. at page 75, 130 S.Ct. 2011 and is unique to our youth offender statutory scheme, as it is not found in other parole-related statutes.

For this reason, the dissent's hypothetical inmate, who is convicted of a sexual assault 20 years into his prison term, cannot expect to be granted parole five years later at a youth offender parole hearing. (See also Cal. Code Regs., tit. 15, § 2402(c)(4) [commission of a sadistic sexual offense demonstrates unsuitability for parole].)