Filed 1/29/21  P. v. Joseph CA2/4

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION FOUR

|  |  |
|---|---|
| THE PEOPLE, | B304271 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. BA050650) |
| v. |  |
| ERIC SCOTT JOSEPH, |  |
| Defendant and Appellant. |  |

APPEAL from an order of the Superior Court of Los Angeles County, David V. Herriford, Judge.  Affirmed.

Christine M. Aros, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Julie L. Garland, Senior

Assistant Attorney General, Arlene A. Sevidal and Minh U. Le, Deputy Attorneys General, for Plaintiff and Respondent.

---

## INTRODUCTION

A jury convicted appellant of first degree murder with special circumstances, a crime he committed when he was 20 years old.  The court sentenced appellant to life in prison without the possibility of parole (LWOP).  Following the enactment of Penal Code section 3051, appellant petitioned the superior court for a youth offender parole hearing under that statute.[1]  Section 3051 affords these parole hearings to offenders who were younger than 26 at the time of their crimes and are serving lengthy, non-LWOP sentences.  It also makes juvenile offenders sentenced to LWOP eligible for such hearings.  But section 3051 does not afford youth offender parole hearings to young-adult offenders like appellant, sentenced to LWOP.  In his petition, appellant argued section 3051's exclusion of his group of offenders violated equal protection.  The superior court denied the petition.

On appeal, appellant contends he is similarly situated to both young-adult offenders serving non-LWOP sentences and juvenile offenders serving LWOP sentences.  He argues that excluding him from section 3051's scope while including

---

[1]      Undesignated statutory references are to the Penal Code.

these other groups is not rationally related to a legitimate government interest.

We conclude section 3051 does not violate appellant's equal protection rights. The Legislature rationally could have concluded that the combination of their more serious offense and their older age at the time of their crimes made young-adult offenders serving LWOP sentences more culpable and less likely to be rehabilitated than either of the other groups to which appellant points. We therefore affirm.

## BACKGROUND[2]

In July 1986, appellant committed murder during the commission of a robbery. He was 20 years old at the time he committed this crime. A jury later convicted appellant of first degree murder and found true the special circumstance allegation that the murder was committed in the commission of a robbery. The court sentenced appellant to LWOP.

In 2019, appellant petitioned in propria persona for a youth offender parole hearing under section 3051. While recognizing that as a young-adult offender serving an LWOP sentence, he was not eligible for such a hearing under section 3051, appellant argued his exclusion from relief violated his right to equal protection of the laws. Appellant contended he was similarly situated to young offenders who

---

[2] We have granted appellant's request to take judicial notice of the record in his direct appeal, case number B093808, including our unpublished decision issued on May 28, 1996.

3

committed first degree murder without special circumstances and received non-LWOP sentences, a group eligible for youth offender parole hearings under section 3051. He asserted there was no rational basis for the statute's exclusion of young-adult offenders sentenced to LWOP.

The superior court summarily denied appellant's petition, noting he was ineligible for a youth offender parole hearing under section 3051 because he was sentenced to LWOP. Appellant timely appealed, renewing his contention that section 3051 violates his right to equal protection.

## DISCUSSION

### A. Youth Offender Parole Hearings

The Legislature enacted section 3051 in 2013 in response to judicial decisions establishing constitutional limits on the length of sentences for juvenile offenders. (Stats. 2013, ch. 312, § 1; § 3051.) This statute gives eligible youth offenders the opportunity for parole in their 15th, 20th, or 25th year of incarceration depending on the sentence they are serving for their controlling offense.[3] (§ 3051, subd. (b)(1)-(4).) In enacting section 3051, "the Legislature explained that 'youthfulness both lessens a juvenile's moral culpability and enhances the prospect that,

---

[3]     Under section 3501, the "'controlling offense'" is "the offense or enhancement for which any sentencing court imposed the longest term of imprisonment." (§ 3051, subd. (a)(2)(B).)

as a youth matures into an adult and neurological development occurs, these individuals can become contributing members of society.'" (*In re Jenson* (2018) 24 Cal.App.5th 266, 276, quoting Stats. 2013, ch. 312, § 1.)

Initially, section 3051 applied only to juveniles -- those who were under 18 years of age at the time they committed their crimes -- but the Legislature later extended its operation to young-adult offenders who were under 23, and then to those who were under 26, at the time of their crimes. (Stats. 2013, ch. 312, § 4; Stats. 2015, ch. 471, § 1; Stats. 2017, ch. 675, § 1.) These amendments reflected the Legislature's recognition that young adults are not yet fully matured, and that because of their youth, these offenders have a lower degree of culpability and an increased potential for rehabilitation when compared with older, fully matured adult offenders.[4] (See *In re Williams* (2020) 57 Cal.App.5th

_____

[4] In support of the bill extending the statute's reach to those under 26 years old, the bill's author stated: "'Scientific evidence on adolescence and young adult development and neuroscience shows that certain areas of the brain, particularly those affecting judgement and decision-making, do not develop until the early-to-mid-20s. Research has shown that the prefrontal cortex doesn't have nearly the functional capacity at age 18 as it does at 25. The prefrontal cortex is responsible for a variety of important functions of the brain including: attention, complex planning, decision making, impulse control, logical thinking, organized thinking, personality development, risk management, and short-term memory. These functions are highly relevant to criminal behavior and culpability.'" (Assem. Com. on Pub. Safety, Analysis of Assem. Bill No. 1308 (2017-2018 Reg. Sess.), *(Fn. is continued on the next page.)*

427, 459 (*Williams*) ["The legislative history suggests the Legislature was motivated by dual concerns: that lengthy life sentences did not adequately account for, first, the diminished culpability of youth, and second, youthful offenders' greater potential for rehabilitation and maturation"].)  Section 3051 does not apply, however, to young-adult offenders like appellant, serving LWOP sentences.[5]  (§ 3051, subd. (h).)

### B. Analysis

Appellant argues section 3051 violates equal protection under both the California Constitution and the United States Constitution by withholding youth offender parole hearings from young-adult offenders serving LWOP sentences while affording such hearings to juvenile-offenders serving LWOP sentences and young-adult offenders serving non-LWOP sentences.  "We review an equal protection claim de novo."  (*People v. Laird* (2018) 27 Cal.App.5th 458, 469.)

Our analysis of state and federal equal protection claims is similar.  (*People v. Chatman* (2018) 4 Cal.5th 277, 288 (*Chatman*).)  Absent reliance on a suspect classification, such as race, or a burden on fundamental rights, we will find

at 2.)  The bill's author further stated that following section 3051's enactment, offenders' "'motivation to focus on rehabilitation has increased.'"  (Assem. Com. on Pub. Safety, Analysis of Assem. Bill No. 1308, *supra*,) at 3.)

[5]    Section 3051 also excludes other groups of offenders not pertinent to this appeal.  (§ 3051, subd. (h).)

a denial of equal protection "only if there is no *rational* relationship between a disparity in treatment and some legitimate government purpose." (*Id.* at 288-289.) "In order to decide whether a statutory distinction is so devoid of even minimal rationality that it is unconstitutional as a matter of equal protection, we typically ask two questions. We first ask whether the state adopted a classification affecting two or more groups that are similarly situated in an unequal manner. [Citation.] If we deem the groups at issue similarly situated in all material respects, we consider whether the challenged classification ultimately bears a rational relationship to a legitimate state purpose." (*Id.* at 289.)

"This so-called 'rational basis' scrutiny is exceedingly deferential: A law will be upheld as long as a court can 'speculate' any rational reason for the resulting differential treatment, regardless of whether the 'speculation has "a foundation in the record,"' regardless of whether it can be 'empirically substantiated,' and regardless of whether the legislature ever 'articulated' that reason when enacting the law. [Citation.] A court may not 'second-guess' the "'wisdom, fairness, or logic"' of the law, and may invalidate it only if the challenger "'negative[s] every conceivable basis"' for the differential treatment." (*People v. Love* (2020) 55 Cal.App.5th 273, 287-288 (*Love*).)

Appellant contends that young-adult offenders serving LWOP sentences are similarly situated to both young-adult offenders serving non-LWOP sentences and juvenile offenders serving LWOP sentences, and that no rational

7

basis supports section 3051's disparate treatment of those groups. We disagree. Even assuming appellant's group is similarly situated to the groups afforded a youth parole hearing parole under the statute, the statute's classifications have a sufficient rational basis.

Our colleagues in Division Five recently rejected a claim nearly identical to appellant's. In *Williams*, *supra*, 57 Cal.App.5th 427, a young-adult offender serving an LWOP sentence similarly argued that section 3051 violated equal protection by denying him a youth offender parole hearing while affording one for young-adult offenders serving non-LWOP sentences.[6] The court concluded both that those groups were not similarly situated and that a rational basis existed for their disparate treatment. (*Williams*, at 459-461.) In finding a sufficient rational basis to support section 3051, the court stated: "The Legislature has prescribed an LWOP sentence for only a small number of crimes. These are the crimes the Legislature deems so morally depraved and so injurious as to warrant a sentence that carries no hope of release for the criminal and no threat of recidivism for society. In excluding LWOP inmates from youth offender parole hearings, the Legislature reasonably

---

[6] The appellant in *Williams* suggested only "[i]n passing" that he was also similarly situated to juveniles sentenced to LWOP, and the court disposed of this contention in a brief footnote, without reaching whether a rational basis supported section 3051's disparate treatment of the latter group. (*Williams*, *supra*, 57 Cal.App.5th at 460, fn. 5.)

could have decided that youthful offenders who have committed such crimes -- even with diminished culpability and increased potential for rehabilitation -- are nonetheless still sufficiently culpable and sufficiently dangerous to justify lifetime incarceration." (*Williams*, at 460; accord, *People v. Blackwell* (2016) 3 Cal.App.5th 166, 202 ["First degree special-circumstance murder, viewed in the abstract, is perhaps the most serious offense under California law"]; *Conservatorship of Hofferber* (1980) 28 Cal.3d 161, 172 ["Variation of the length and conditions of confinement, depending on degrees of danger reasonably perceived as to special classes of persons, is a valid exercise of state power"].) We agree with *Williams*'s analysis regarding section 3051's disparate treatment of young-adult offenders serving LWOP sentences and those serving non-LWOP sentences.

We further conclude that a rational basis supports the statute's distinction between young-adult offenders serving LWOP sentences and juvenile offenders serving the same sentences. The Legislature rationally could have concluded that despite not being fully matured, young-adult offenders who committed the gravest of crimes, resulting in LWOP sentences, were more culpable and less likely to rehabilitate than juveniles who committed similar crimes. Indeed, the United States Supreme Court has found the distinction between juveniles and non-juveniles significant in the realm of criminal sentencing. (See, e.g*., Roper v. Simmons* (2005) 543 U.S. 551, 574 (*Roper*) [Eighth Amendment of United

9

States Constitution prohibits death penalty for those younger than 18]; *Miller v. Alabama* (2012) 567 U.S. 460, 465 (*Miller*) [Eighth Amendment prohibits mandatory LWOP sentences for those younger than 18].)  "[W]hile '[d]rawing the line at 18 years of age is subject . . . to the objections always raised against categorical rules . . . [, it] is the point where society draws the line for many purposes between childhood and adulthood.'" (*People v. Argeta* (2012) 210 Cal.App.4th 1478, 1482, quoting *Roper*, *supra*, at 574.)

In support of his contention that section 3051 nevertheless violates equal protection, appellant cites a concurrence in *In re Jones* (2019) 42 Cal.App.5th 477 (*Jones*).  In *Jones*, the Court of Appeal rejected a claim that section 1170, subdivision (d)(2), violates equal protection by allowing juvenile offenders serving LWOP sentences, but not young-adult offenders serving those sentences, to petition for resentencing. (*Jones*, *supra,* at 480.)  However, a concurring opinion expressed the position that section 3051's disparate treatment of young-adult offenders sentenced to LWOP may violate equal protection.  (*Jones*, at 483 (conc. opn. of Pollak, J.).)  Addressing the disparity between young-adult offenders serving LWOP sentences and those serving non-LWOP sentences, the concurrence stated:  "The presumptive fact that the LWOP sentence was based on a more serious offense provides no rational basis for the distinction because the statute is not designed to determine the degree of appropriate punishment but to determine whether the individual has outgrown his or her criminality.  There is no

reason to conclusively presume that one such person is more likely to have satisfactorily matured than the other." (*Id.* at 486.) Turning to the disparity between young-adult offenders serving LWOP sentences and juvenile offenders serving those sentences, the concurrence stated that a youth parole hearing provides only for an evaluation of the inmate's suitability for release, and that "[t]he Legislature having recognized that the maturing process normally continues to at least 25 years of age, there is little if any reason to deny these individuals the opportunity to show that they have attained the level of maturity that warrants their return to society." (*Ibid.*)

Appellant argues we should follow the reasoning of the concurring opinion in *Jones*. We are unpersuaded. In enacting section 3051 and in later extending its reach to most young-adult offenders, the Legislature sought to address both juveniles' increased chances of rehabilitation and their diminished moral culpability. (See *In re Jenson*, *supra*, 24 Cal.App.5th at 276, quoting Stats. 2013, ch. 312, § 1; *Williams*, *supra*, 57 Cal.App.5th at 459; Assem. Com. on Pub. Safety, Analysis of Assem. Bill No. 1308 (2017-2018 Reg. Sess.), at 2-3.) The tiered parole eligibility dates the statute provides based on the offender's sentence support that the Legislature was not blind to the varying degrees of culpability even within the groups of eligible offenders. (See § 3051, subd. (b)(1)-(4).) As discussed, the Legislature rationally could have determined that young-adult offenders serving LWOP sentences were generally more culpable than

11

either young adults serving non-LWOP sentences or juveniles serving LWOP sentences.

Moreover, even if the Legislature had focused on the potential for rehabilitation alone in enacting section 3051, it rationally could have concluded that either their more serious offenses or their older age at the time of the crime made them more dangerous and less likely to be rehabilitated. That this conclusion may be wrong in some cases does not render the Legislature's measure irrational. (*Johnson v. Department of Justice* (2015) 60 Cal.4th 871, 887 ["'[w]hen conducting rational basis review, we must accept any gross generalizations and rough accommodations that the Legislature seems to have made.' [Citation.] 'A classification is not arbitrary or irrational simply because there is an "imperfect fit between means and ends"'"].)

Finally, affording juvenile offenders sentenced to mandatory LWOP a meaningful opportunity to obtain release is necessary to accommodate the Eighth Amendment's prohibition on mandatory LWOP sentences for juveniles. (See *Miller*, *supra*, 567 U.S. at 465.) No similar requirement applies to young-adult offenders, whom the Eighth Amendment does not protect from mandatory LWOP sentences. The legislature rationally could have decided to afford section 3051's potential relief to those serving LWOP sentences only where constitutionally required.

We recognize that the Legislature's judgment could be seen as harsh or unfair. It is possible that a young-adult offender would prove suitable for release at some point

12

during his incarceration if given the chance, yet that offender will never receive an opportunity to make that showing under section 3501, as currently enacted. But we are not tasked with assessing the wisdom or desirability of the Legislature's choice. Rather, our duty is to determine whether its choice had a sufficient rational basis. (See *Chatman, supra*, 4 Cal.5th at 288-289; *Love, supra*, 55 Cal.App.5th at 287-288.) We conclude it did.

## DISPOSITION

The superior court's order is affirmed.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

MANELLA, P. J.

We concur:

COLLINS, J.

CURREY, J.