Filed 10/7/21  P. v. Gonzalez CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E076203 |
| v. | (Super.Ct.No. CR44467) |
| ISMEAL GONZALEZ, | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of Riverside County.  John D. Molloy, Judge.  Affirmed.

Mark D. Johnson, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Arlene A. Sevidal and Randall D. Einhorn, Deputy Attorneys General, for Plaintiff and Respondent.

1

In 1993, a jury convicted defendant Ismeal Gonzalez of one count of first degree murder (Pen. Code,[1] § 187), with the special circumstance that he intentionally killed the victim while lying in wait (§ 190.2, subd. (a)(15)).  The jury also found true the allegation that he personally used a firearm.  (§§ 12022.5, subd. (a) & 1192.7, subd. (c)(8).)  A trial court sentenced defendant to life without the possibility of parole (LWOP).  He was 18 years old when he committed the murder.  In 2020, he filed a motion seeking a youth offender parole hearing under section 3051.  The trial court denied the motion, finding that defendant was statutorily ineligible for relief.

On appeal, defendant argues that section 3051 violates equal protection because it denies young adult offenders sentenced to LWOP, like him, the right to a youth offender parole hearing.  He further contends his LWOP sentence constitutes cruel and unusual punishment under the Eighth Amendment.  We disagree and affirm.

## DISCUSSION

### I.  The Exclusion of Young Adult Offenders Sentenced to LWOP Does Not Violate Equal Protection

Defendant argues he is entitled to a youth offender parole hearing, claiming section 3051 denies his right to equal protection of the laws in two ways: (1) it grants a youth offender parole hearing to young adults (i.e, those aged 18-25 years) who are convicted of first degree murder but not sentenced to LWOP, but denies such relief to

---

[1]  All further statutory references will be to the Penal Code unless otherwise noted.

young adults convicted of murder but sentenced to LWOP, like himself; and (2) it grants a youth offender parole hearing to persons under the age of 18 sentenced to LWOP, but denies such a hearing to young adult offenders sentenced to LWOP. He contends that he is similarly situated to young adult offenders not sentenced to LWOP and persons under 18 sentenced to LWOP. We conclude defendant has failed to demonstrate an equal protection violation.

A. *Standard of Review*

Equal protection claims are reviewed de novo when, as here, they involve pure questions of law. (*People v. McKee* (2012) 207 Cal.App.4th 1325, 1338.) In addition, facial constitutional challenges presenting pure questions of law may be raised, as here, for the first time on appeal. (*In re Shenna K.* (2007) 40 Cal.4th 875, 885-886, 889.) Thus, here, although defendant did not raise a facial equal protection challenge in the trial court, including at sentencing, he has not forfeited the claim on appeal.

B. *Section 3051*

"Youth offender parole hearings under section 3051 were established by the Legislature in 2013, following a series of United States and California Supreme Court cases addressing the constitutionality of lengthy prison sentences for juvenile offenders." (*In re Williams* (2020) 57 Cal.App.5th 427, 431; see *Graham v. Florida* (2010) 560 U.S. 48 (*Graham*); *Miller v. Alabama* (2012) 567 U.S. 460 (*Miller*); *Roper v. Simmons* (2005) 543 U.S. 551 (*Roper*).) Section 3051 "provides that an offender who committed a 'controlling offense' as a youth is entitled to a 'youth offender parole hearing' after a fixed period of years set by statute. The 'controlling offense' is 'the offense or

3

enhancement for which any sentencing court imposed the longest term of imprisonment.' " (*In re Jenson* (2018) 24 Cal.App.5th 266, 277 (*Jenson*).) "In enacting section 3051, the Legislature found that 'youthfulness both lessens a juvenile's moral culpability and enhances the prospect that, as a youth matures into an adult and neurological development occurs, these individuals can become contributing members of society.' [Citation.] It thus sought to 'create a process by which growth and maturity of youthful offenders can be assessed and a meaningful opportunity for release established.' " (*People v. Miranda* (2021) 62 Cal.App.5th 162, 181, review granted June 16, 2021, S268384.)

"As originally enacted, section 3051 applied only to non-LWOP offenses committed before the offender was 18 years old. [Citation.] An amendment effective January 1, 2016, raised the age of eligibility to 23 years; and an amendment effective January 1, 2018, raised the age of eligibility to 25 years and included LWOP offenses committed before age 18. [Citations.] Thus, section 3051 now provides that an offender who committed a 'controlling offense' under the age of 26 is entitled to a 'youth offender parole hearing' during his or her 15th year of incarceration if he received a determinate sentence; during his or her 20th year of incarceration if he or she received a life term of less than 25 years to life; and during his or her 25th year of incarceration if he or she received a term of 25 years to life. [Citation.] An offender convicted of a controlling offense committed before the age of 18 for which he or she was sentenced to LWOP is entitled to a youth offender parole hearing during his or her 25th year of incarceration." (*Jenson*, *supra*, 24 Cal.App.5th at p. 277.)

Section 3051 excludes several categories of youth offenders. Subdivision (h) provides, in relevant part: "This section shall not apply to cases in which sentencing occurs pursuant to Section 1170.12, subdivisions (b) to (i), inclusive, of Section 667, or Section 667.61, or to cases in which an individual is sentenced to life in prison without the possibility of parole for a controlling offense that was committed *after the person had attained 18 years of age*." (§ 3051, subd. (h), italics added.)

C. *Equal Protection*

"Both the Fourteenth Amendment to the United States Constitution and article I, section 7 of the California Constitution guarantee to all persons the equal protection of the laws. The right to equal protection of the laws is violated when 'the government . . . treat[s] a [similarly situated] group of people unequally without some justification.' [Citations.] 'The California equal protection clause offers substantially similar protection to the federal equal protection clause.' " (*People v. Jackson* (2021) 61 Cal.App.5th 189, 195 (*Jackson*).)

" ' "The first prerequisite to a meritorious claim under the equal protection clause is a showing that the state has adopted a classification that affects two or more *similarly situated* groups in an unequal manner." [Citations.] This initial inquiry is not whether persons are similarly situated for all purposes, but "whether they are similarly situated for purposes of the law challenged." ' " (*People v. Morales* (2016) 63 Cal.4th 399, 408.)

However, it is not enough simply to show that similarly situated classes of people are treated differently. A defendant must also show that there is no rational basis for the distinction. "Where our Legislature fixes different punishments for different crimes,

5

those differences do not violate equal protection unless the challenges show 'there is no "rational relationship between the disparity of treatment and some legitimate governmental purpose." ' [Citations.] 'This so-called "rational basis" scrutiny is exceedingly deferential: A law will be upheld as long as a court can "speculat[e]" any rational reason for the resulting differential treatment, regardless of whether the "speculation has 'a foundation in the record,' " regardless of whether it can be "empirically substantiated," and regardless of whether the Legislature ever "articulated" that reason when enacting the law.' " (*Jackson*, *supra*, 61 Cal.App.5th at p. 196.)

D. *There is a Rational Basis for Treating Young Adult Offenders Sentenced to LWOP Differently Than Young Adult Offenders Sentenced to Life with the Possibility of Parole*

Defendant argues that section 3051 violates equal protection because it treats young adult offenders (i.e., those 18 to 25 years old) convicted of first degree murder and sentenced to LWOP, like himself, differently than young adult offenders who are sentenced to parole-eligible life terms. We see no equal protection violation.

Defendant asserts that, whether LWOP may be imposed is a "crime specific determination," but "whether a sentence imposed on a juvenile is constitutional is determined not by looking at the offense for which he or she was sentenced. It is determined by the characteristics of juveniles, and why those characteristics make them less culpable . . . [and] more likely to be rehabilitated." He then asserts "the only reasonable conclusion is that section 3051's exclusion of young offenders sentenced to LWOP violates the equal protection clause because there is no rational basis for

6

distinguishing them from young offenders sentenced to life." Defendant appears to be asserting that young adult offenders sentenced to LWOP and those sentenced to parole-eligible life terms are similarly situated with respect to their potential for growth and rehabilitation. "[O]ne could say that both groups committed their crimes before their prefrontal cortexes reached their full functional capacity, when their characters were not yet fully formed. Both groups are equally likely to demonstrate improved judgment and decisionmaking as they reach emotional and cognitive maturity." (*In re Williams*, *supra*, 57 Cal.App.5th at p. 435.)

However, both classifications involve young adult offenders convicted of first degree murder, "[b]ut those sentenced to LWOP have *also* been found, beyond a reasonable doubt, to have committed that first degree murder under one . . . of the special circumstances that reflect that the particular first degree murder was in some manner aggravated or reflected a greater risk of harm to persons other than the immediate murder victim or victims. [Citations.] As a result, [young adult] offenders who have been sentenced to LWOP have committed an aggravated form of first degree murder that distinguishes them from [young adult] offenders who have committed first degree murder but done so in the absence of any such aggravating factors." (*Jackson*, *supra*, 61 Cal.App.5th at p. 199.) Although defendant's case does not involve capital punishment, offenses for which a defendant could be sentenced to death, such as the murder with special circumstances in this case, are considered " "a narrow category of the most

7

serious crimes' " reflecting "extreme culpability." (*Roper*, *supra*, 543 U.S. at p. 568.) Thus, the two groups are not similarly situated. (*Jackson*, at p. 199.)

Even assuming these groups are similarly situated, we still find no equal protection violation. "There is [] a rational basis for distinguishing between a young adult LWOP offender and a young adult offender serving a non-LWOP sentence: the severity of the crime committed." (*People v. Acosta* (2021) 60 Cal.App.5th 769, 780 (*Acosta*).) "The Legislature has prescribed an LWOP sentence for only a small number of crimes. These are the crimes the Legislature deems so morally depraved and so injurious as to warrant a sentence that carries no hope of release for the criminal and no threat of recidivism for society. In excluding LWOP inmates from youth offender parole hearings, the Legislature reasonably could have decided that youthful offenders who have committed such crimes—even with diminished culpability and increased potential for rehabilitation—are nonetheless still sufficiently culpable and sufficiently dangerous to justify lifetime incarceration." (*In re Williams*, *supra*, 57 Cal.App.5th at p. 436.)

Defendant here was convicted of a special circumstance murder. "The crime carries a mandatory sentence of LWOP or death [citation], which are the harshest penalties available under our penal system and are reserved for crimes of the most heinous nature." (*In re Williams*, *supra*, 57 Cal.App.5th at p. 436; see § 190.2, subd. (a).) "The Legislature rationally judged this crime to be more severe and more deserving of lifetime punishment than nonspecial circumstance first degree murder." (*In re Williams*, at p. 436.) "[P]ublic safety, and the desire to punish those persons who commit first degree special circumstance murder more harshly than persons who commit first degree

murder without aggravating circumstances, provide a plausible basis for our Legislature to treat these two classifications differently for purposes of section 3051." (*Jackson*, *supra*, 61 Cal.App.5th at p. 200.)  The suggestion that the Legislature cannot consider the nature of the crime, no matter how heinous, in determining whether a category of adult offenders may be considered for parole is untenable.

Therefore, because there is a rational basis for distinguishing between a young adult LWOP offender and a young adult offender serving a non-LWOP sentence—the severity of the crime committed—we conclude that no equal protection violation arose from denying defendant a section 3051 parole hearing.  (See *In re Williams*, *supra*, 57 Cal.App.5th at pp. 435-436; see also *Jackson*, *supra*, 61 Cal.App.5th at pp. 199- 200.)

E. *There is a Rational Basis for Treating Young Adult Offenders Sentenced to LWOP Differently Than Juvenile Offenders Sentenced to LWOP*

Defendant next argues that section 3051 violates equal protection because it treats young adult offenders who commit murder and are sentenced to LWOP differently than juveniles (those under 18 years of age) who commit murder and receive the same sentence.  (§ 3051, subds. (b)(4) & (h).)  Assuming these groups are similarly situated, we still find no equal protection violation.

[T]here is a rational basis for distinguishing between juvenile LWOP offenders and young adult LWOP offenders: their age." (*Acosta*, *supra*, 60 Cal.App.5th at p. 779.) Both the United States Supreme Court and the California Supreme Court "have repeatedly found the bright line drawn between juveniles and nonjuveniles to be a rational one when it comes to criminal sentencing." (*Jackson*, *supra*, 61 Cal.App.5th at

9

pp. 196-197; *Roper*, *supra*, 543 U.S. at p. 574 ["The age of 18 is the point where society draws the line for many purposes between childhood and adulthood."]; *Miller*, *supra*¸ 567 U.S. at p. 471 ["[C]hildren are constitutionally different from adults for purposes of sentencing."]; *People v. Gamache* (2010) 48 Cal.4th 347, 405 (*Gamache*) ["We previously have rejected the argument that a death penalty scheme that treats differently those who are 18 years of age and older, and those younger than 18, violates equal protection."]; *In re Jones* (2019) 42 Cal.App.5th 477, 482 ["While young adults share many of the attributes of youth, they are by definition further along in the process of maturation, and the law need not be blind to the difference."].)

Defendant was an 18-year-old *adult* when he committed the special circumstance murder here. (See *Jackson*, *supra*, 61 Cal.App.5th at p. 198.) Because there is a rational basis for distinguishing between young adult LWOP offenders and juvenile LWOP offenders—their age—we conclude that no equal protection violation arose from denying him a section 3051 parole hearing.

## II. Defendant's Sentence is Not Cruel and Unusual Punishment

Defendant alternatively argues his LWOP sentence constitutes cruel and unusual punishment because it is grossly disproportionate to the sentences imposed on juveniles and other young adult offenders for similar offenses, who will have an opportunity to ask for parole under section 3051. He simply concludes that, "compared to these other youthful offenders," his sentence is "unconstitutionally disproportionate to his offense." His contentions have no merit.

In assessing a claim of cruel and unusual punishment, the court must "decide whether the penalty given 'is so disproportionate *to the crime for which it is inflicted* that it shocks the conscience and offends fundamental notions of human dignity,' thereby violating the prohibition against cruel and unusual punishment of the Eighth Amendment of the federal Constitution or against cruel or unusual punishment of article I, section 17 of the California Constitution." (*People v. Cunningham* (2001) 25 Cal.4th 926, 1042, italics added.) "Although articulated slightly differently, both standards prohibit punishment that is 'grossly disproportionate' to the crime or the individual culpability of the defendant. [Citations.] Under both standards, the court examines the nature of the offense and the defendant, the punishment for more serious offenses within the jurisdiction, and the punishment for similar offenses in other jurisdictions." (*People v. Mendez* (2010) 188 Cal.App.4th 47, 64 (*Mendez*).)

Defendant does not contend that his LWOP sentence is grossly disproportionate to his crime or his individual culpability. (See *Mendez, supra*, 188 Cal.App.4th at p. 64.) Instead, he argues that his sentence is disproportionate "in comparison to the sentences of juveniles sentenced to LWOP or young offenders sentenced only to life" and is also somehow "unconstitutionally disproportionate to his offense." In other words, he contends that section 3051's exclusion of young adult offenders sentenced to LWOP "fails to take into consideration the fact that young adults are much more likely to mature and reform while incarcerated," and the denial of the opportunity to show such factors constitutes cruel and unusual punishment. That is simply not the test. (See *Ibid*.)

11

Defendant relies on *Miller*, *supra*, 567 U.S. 460 and *Graham*, *supra*, 560 U.S. 48, in arguing that the constitutional limitations on sentencing afforded to juveniles offenders should also apply to young adult offenders, who, like him, were sentenced to LWOP for a crime committed when they were under the age of 26. However, California courts repeatedly have rejected the cruel and unusual punishment claim that defendant asserts here. As the court in *In re Williams*, *supra*, 57 Cal.App.5th 427 held, "[i]f the Eighth Amendment does not prohibit a sentence of death for 21 year olds, then most assuredly, it does not prohibit the lesser LWOP sentence." (*In re Williams*, *supra*, 57 Cal.App.5th at p. 439; see *Gamache*, *supra*, 48 Cal.4th at p. 405 [United States Constitution prohibits the death penalty for defendants under 18 years old, but not for those 18 years of age and older].) Moreover, because *Miller* and *Graham* and their progeny expressly limited their holdings to juvenile offenders, courts have declined to extend those holdings to young adult offenders sentenced to LWOP or its functional equivalent. (*People v. Montelongo* (2020) 55 Cal.App.5th 1016, 1031-1032 [LWOP sentence for 18 year old was not cruel and unusual punishment]; *Acosta*, *supra*, 60 Cal.App.5th at pp. 781-782 [triple LWOP sentence for a 21 year old on the autism spectrum was not cruel and unusual punishment]; *People v. Abundio* (2013) 221 Cal.App.4th 1211, 1219-1220 [LWOP sentence for 18 year old was not cruel and unusual punishment]; *People v. Edwards* (2019) 34 Cal.App.5th 183, 190-192 [the functional equivalent of LWOP sentence was not cruel and unusual punishment for a 19 year old]; and *People v. Perez* (2016) 3 Cal.App.5th 612, 617-618 [86-year-to-life sentence constitutional for a 20 year old].) We conclude that defendant's sentence does not constitute cruel and unusual punishment.

12

## DISPOSITION

The judgment is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS


FIELDS                        
                          J.


We concur:


RAMIREZ               
                P. J.


MILLER                
            J.