Filed 8/22/22  P. v. Meza CA5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>EMMANUEL MEZA,<br><br>    Defendant and Appellant. | F080308<br><br>(Super. Ct. No. VCF328656)<br><br><br>**OPINION** |

APPEAL from a judgment of the Superior Court of Tulare County.  Gary L. Paden, Judge.

Eric Weaver, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra and Rob Bonta, Attorneys General, Lance E. Winters, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Eric L. Christoffersen and Craig S. Meyers, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

A jury found Emmanuel Meza (defendant) guilty of second degree murder, attempted voluntary manslaughter, and unlawful participation in a criminal street gang.

The jury also sustained gang enhancement allegations. The gang verdicts were based on a former version of Penal Code section 186.22, which has been amended by Assembly Bill No. 333 (2021–2022 Reg. Sess.) (Assembly Bill 333). (All undesignated statutory references are to the Penal Code.) Defendant argues the current version of section 186.22 applies retroactively and entitles him to reversal of the gang participation conviction and gang enhancement findings. We agree.

Defendant also raises two sentencing issues. He argues, and the People appropriately concede, that a prior prison term enhancement has been invalidated by other recent changes in the law. Defendant separately challenges the constitutionality of section 3051's exclusion of defendants sentenced under the "Three Strikes" law (§ 667, subds. (b)–(i), 1170.12, subds. (a)–(d)) from its "youth offender parole" provisions.

Defendant asked the trial court to dismiss a prior strike allegation for purposes of sentencing so that he would be eligible for relief under section 3051, but the request was denied. Because the sentence is being vacated due to reversal of the gang verdicts and defendant will be resentenced by the trial court, we view the section 3051 issue as premature. We affirm in part, reverse in part, and remand for further proceedings.

## FACTUAL AND PROCEDURAL BACKGROUND

On December 22, 2015, E.F. (age 18) was with his younger cousins, brothers J.C. and S.C., when he began receiving text messages and phone calls from Ebony Garcia (age 18). E.F. would later testify Garcia was a friend with whom he previously had casual sexual relations. On this date, however, Garcia was angrily accusing him of spreading a false rumor about her having a sexually transmitted disease. Garcia was with her cousin, Ruben Gonzalez (age 20), and defendant (age 20), at the time of the calls.

At some point during E.F.'s conversations with Garcia, "the phone was on speaker" and his cousins began saying "rude and insulting things" to her. Defendant and Gonzalez eventually joined the conversation on Garcia's end of the call. The two groups exchanged derogatory remarks and proposals to settle things with a fight.

2.

During the phone call, S.C., Gonzalez, and defendant all identified themselves as Norteño gang members. There is conflicting evidence regarding which gang subsets each person claimed to be affiliated with, but all three self-identified as Norteños. Neither E.F. nor J.C. claimed any gang affiliation during the exchange.[1]

Later that afternoon, Garcia, Gonzalez, and defendant confronted E.F. and his cousins in person. Garcia stood by as Gonzalez and defendant initiated a physical altercation that ended with J.C. being stabbed to death. S.C. was also stabbed but survived, and E.F. sustained cuts and bruises from being kicked in the head after falling to the ground.

Garcia, Gonzalez, and defendant were charged with murder (§ 187; count 1); attempted murder of S.C. (§§ 187, 664; count 2); and unlawful participation in a criminal street gang (§ 186.22, subd. (a); count 5). A gang conspiracy in violation of section 182.5 was pleaded as count 4 but later dismissed. Gonzalez was additionally charged with committing aggravated assault on E.F. (§ 245, subd. (a)(4); count 3).

Count 1 included a special circumstance allegation of gang murder within the meaning of section 190.2, subdivision (a)(22), plus gang enhancement allegations under section 186.22 and an allegation of personal use of a deadly weapon (§ 12022, subd.

_____

[1]According to police testimony, there are multiple Norteño "cliques or street hoods" in Visalia, e.g., "Central Lokes, North Side Varrio Lokes, North Side Visa Boys, North Side Visa." S.C. testified to identifying himself as a "North Side Visalia" (NSV) gang member, which he further testified was in fact true. S.C. also testified that his brother, J.C., was not involved with gangs, and his cousin, E.F., "is a Crip, but he didn't mention his hood" during the call. In one part of S.C.'s testimony, he alleged defendant and Gonzalez identified themselves as being from "NSV." In other testimony, he alleged Gonzalez ( "Blackie") had claimed affiliation with the "Visa Boys" but maintained defendant ("Doughboy") had said he was from NSV. Defendant denied participating in the call, and the People's gang expert opined he was actually a member of the North Side Visa Boys. Gonzalez admitted to being a Norteño and denied affiliation with any particular "hood," but he did testify to having "put in some work" with or for the "North Side Varrio Locos" in 2014. In Gonzalez's version of events, S.C. had "said he was from Lokes," i.e., the "Locos" "hood," at the beginning of their phone conversation. Although S.C. denied saying that, he testified Gonzalez and defendant later came to his house and asked, "who's from Lokes?"

(b)(1)). Count 2 alleged personal infliction of great bodily injury (GBI) (§ 12022.7, subd. (a)), plus the same gang and weapon enhancement allegations as count 1. Defendant was further alleged to have suffered a prior strike and serious felony conviction (§§ 667, subds. (a)(1), (b)–(i), 1170.12) and to have served a prior prison term within the meaning of section 667.5, former subdivision (b).

The charges against Ebony Garcia were resolved by plea bargain in 2018. Defendant and Gonzalez were jointly tried before a jury in August 2019. Gonzalez was fully acquitted on counts 1 and 2, but he was convicted as charged on counts 3 and 5. Gonzalez is not a party to this appeal.

Defendant was acquitted of first degree murder, and so the jury did not reach the gang special circumstance allegation. He was convicted of second degree murder as a lesser included offense, and all enhancement allegations were found true. On count 2, the jury acquitted him of attempted murder but found him guilty of attempted voluntary manslaughter, with true findings on the enhancements. Defendant was convicted of unlawful gang participation as charged in count 5. The prior conviction and prison term allegations were found true in a bifurcated proceeding.

In November 2019, defendant was sentenced on count 1 to an indeterminate prison term of 15 years to life, which was then doubled because of his prior strike, plus five years for the prior serious felony conviction; one year for the weapon enhancement; and one year for the prior prison term. Count 1 was ordered to run consecutive to a 22-year sentence imposed for count 2 (the middle term, doubled because of the strike, plus five years for the prior serious felony conviction; three years for the GBI enhancement; one year for the weapon enhancement; and one year for the prior prison term). The trial court imposed and stayed punishment for count 5 (see § 654) and struck the gang enhancements for purposes of sentencing.[2]

[2]The determinate abstract of judgment erroneously indicates a 15-year term for count 2, failing to account for the trial court's doubling of the middle term because of the prior strike and

4.

**DISCUSSION**

## I.     Gang Verdicts

Defendant seeks reversal of his gang participation conviction and the gang enhancement findings. In his opening brief, defendant relied on *People v. Sanchez* (2016) 63 Cal.4th 665 (*Sanchez*) to challenge the evidence of a "pattern of criminal gang activity" as defined in section 186.22. In supplemental briefing, he relies on Assembly Bill 333 to argue the verdicts do not include findings of a "common benefit" to his gang as required under the current law. The People dispute the *Sanchez* claim on the merits. The People concede the issues of retroactivity and error with regard to Assembly Bill 333, but they contend the error is harmless.

### A.     Additional Background

Defendant filed a motion in limine to "exclude all case specific hearsay and all testimonial hearsay pursuant to the holding of [*Sanchez*], including hearsay to prove predicate offences [*sic*]…." The defense relied on *People v. Lara* (2017) 9 Cal.App.5th 296, wherein the Third Appellate District found hearsay testimony on the required pattern of criminal gang activity to be inadmissible under *Sanchez*. In lieu of a written opposition, the People filed a trial brief containing their own motions in limine.

The People's ninth motion in limine was set forth under the heading, "EXPERT TESTIMONY IS APPROPRIATE FOR ESTABLISHING MOST OF THE REQUIREMENTS OF PENAL CODE § 186.22." (Boldface omitted.) This was less of a motion than a position statement regarding *Sanchez*. Similarly, the People's 12th motion in limine was submitted under the heading, "PATTERN OF CRIMINAL STREET GANG ACTIVITY MAY BE PROVED THROUGH USE OF PRIOR CONVICTIONS OF OTHERS." (Boldface omitted.) This "motion" stated the People's

---

its imposition of a one-year term for the weapon enhancement under section 12022, subdivision (b)(1). Because defendant will be resentenced on remand, the issue is moot.

intent to "submit two certified convictions from past cases" to show a pattern of criminal gang activity by the "Norteno Criminal Street Gang."

When the defense motions were heard, the trial court referred to the People's "additional brief … on the *Sanchez* issue" before stating, "I'm ruling in their favor on the predicates, so that objection is overruled." Defense counsel then stated his position for the record. He referenced "the *Lara* case" and said, "It isn't the existence of the conviction that I'm concerned about. It is whether or not the predicate offenders were gang members." The prosecutor responded: "As addressed in my brief, the issue of case specific as addressed in *Sanchez* and following it, relates only to the defendants on trial. The predicate cases are not case specific. That is what is addressed in my motion." The trial court agreed, stating, "My ruling stands."

During trial, the People's gang expert testified to the signs, symbols, and colors associated with the Norteño gang, and he described tattoos commonly found on Norteño gang members. He testified to the gang's hierarchical structure, including regional "subsets and cliques." When the prosecutor began to question him about "a homicide that took place on May 19th, 2010," the trial court interjected to say, "The Court will note the previous court rulings on this issue on the predicates and proceed in that manner."

The People introduced certified court records showing Jacob Robles and Julian Gonzalez—two men not involved in this case—were convicted of murder based on the referenced incident of May 19, 2010. The expert responded affirmatively when asked if he was "aware that Jacob Robles and Julian Gonzalez were convicted for that homicide[.]" The prosecutor next elicited an opinion as to whether those men were gang members at the time of the murder. The expert testified, "They were Norteno gang members." Defense counsel immediately said, "Objection. Move to strike unless there's personal knowledge."

The trial court responded to the objection by saying, "I'm going to treat all the predicates with your objection in mind." Following a sidebar conference, the court

6.

added: "The record will reflect the continuing objection to the predicates from the defense in this matter, without the necessity of having to object to every single opinion by this expert on the predicates. [¶] The Court is going to overrule that continuing objection. So, [counsel], there's no need to continue to lodge objections on this issue."

The examination continued with questions about the convictions of two men, Adrian Esquer and Anthony Hanson, involved in a shooting on January 27, 2012. The expert answered yes when asked if he was "familiar with the attempted homicide" committed on that date. The prosecutor's followup questions concerned Esquer's and Hanson's gang affiliations, and the expert opined they were active Norteño gang members at the time of the shooting.

Later, in response to a hypothetical question based on the facts of this case, the expert opined the stabbing benefited the Norteño gang because "it bolsters their status and their reputation by a couple of Nortenos committing a violent act. It bolsters their status within a gang and gives them more credibility to fellow gang members." The testimony continued as follows regarding the intent to promote, further, or assist in criminal conduct by gang members (see §§ 186.22, subds. (a), (b)(1)):

> "[PROSECUTOR:] Q. How would that type of conduct promote a gang?

> "[EXPERT WITNESS:] A. So that type of crime obviously is pretty serious. That would get a lot of attention. A lot of people would know about that. Sometimes even media coverage, things like that. That is all in the name of the Norteno gang. The more notoriety they get, the more empowered they feel.

> "They also accomplish this by using graffiti in neighborhoods and stuff like that. They are establishing their dominance and their ability to be violent for the cause that they believe in.

> "Q. Could it also instill fear?

> "A. Yes.

7.

"Q. How does instilling fear promote the gang?

"A. Yes. So being that some of their primary activities are some of those 33 crimes listed [in section 186.22, former subdivision (e)], they are into criminal behavior quite a bit, and the more witnesses that you have coming forward to report that, the worse it is for them. So if they are able to intimidate people and convince others, it basically becomes, you know, more dangerous to come forward to the police and testify, what have you. They would rather just keep their mouth shut. By intimidating people, they are afforded the ability to expand their territory by committing more crimes.

"Q. How would that crime promote and further the gang?

"A. So again, it gives the gang notoriety. The individual members that would have committed that crime, may see how it bolsters, increases status in the gang. And their overall dominance in people, knowing what was done, sends a message to rivals and any witnesses.

"Q. And what about—how would that assist the criminal street gang?

"A. How would it assist the gang?

"Q. Yes.

"A. It just empowers the gang. Strengthens it. Particularly when some of these cases do go unsolved due to a lack of evidence or uncooperative witnesses. The more crime that they can get away with, the more empowered they are. And obviously, that helps with recruiting. It becomes more enticing for younger people who are not a part of the gang, who see this kind of stuff. And there's kind of a brotherhood that they share, and it becomes more appealing for recruitment.

"Q. Could it also assist in stopping those who are perceived as trying to say they are part of the gang or claiming they are part of the gang when they are not?

"A.    Yes.

"Q. How so?

"A. You can't claim to be a Norteno if you are not a Norteno. They know each other. And maybe not walking down the street, but eventually it will be determined that you are not a Norteno and you will face

8.

consequences for that. You cannot claim to be a part of something that you are not. It is a strict violation of one of the 14 bonds."

## B.     Applicable Law

Section 186.22 prohibits unlawful participation in a criminal street gang, as set forth in subdivision (a), and includes sentencing enhancement provisions, which are found in subdivision (b). A criminal street gang is "an ongoing, organized association or group of three or more persons, whether formal or informal, having as one of its primary activities the commission of one or more of the criminal acts enumerated in subdivision (e), having a common name or common identifying sign or symbol, and whose members collectively engage in, or have engaged in, a pattern of criminal gang activity."[3] (§ 186.22, subd. (f).)

A "'pattern of criminal gang activity' means the commission of, attempted commission of, conspiracy to commit, or solicitation of, sustained juvenile petition for, or conviction of" two or more offenses listed in section 186.22, subdivision (e), if such conduct occurred within certain time frames and under particular circumstances specified therein.[4] (§ 186.22, subd. (e)(1).) This is commonly known as the "predicate offenses" requirement. (*People v. Navarro* (2021) 12 Cal.5th 285, 311.)

---

[3]At the time of the underlying events, a criminal street gang was defined as "any ongoing organization, association, or group of three or more persons, whether formal or informal, having as one of its primary activities the commission of one or more of the criminal acts enumerated in paragraphs (1) to (25), inclusive, or (31) to (33), inclusive, of subdivision (e), having a common name or common identifying sign or symbol, and whose members individually or collectively engage in or have engaged in a pattern of criminal gang activity." (Former § 186.22, subd. (f), as amended by Stats. 2016, ch. 887, § 1; see Stats. 2013, ch. 508, § 1.)

[4]A "pattern of criminal gang activity" was previously defined as "the commission of, attempted commission of, conspiracy to commit, or solicitation of, sustained juvenile petition for, or conviction of two or more of the [offenses listed in paragraphs (1) to (33)], provided at least one of these offenses occurred after the effective date of this chapter and the last of those offenses occurred within three years after a prior offense, and the offenses were committed on separate occasions, or by two or more persons …." (Former § 186.22, subd. (e), 1st ¶, as amended by Stats. 2016, ch. 887, § 1; see Stats. 2013, ch. 508, § 1.)

9.

"The elements of the gang participation offense in section 186.22[,] [subdivision] (a) are: First, active participation in a criminal street gang, in the sense of participation that is more than nominal or passive; second, knowledge that the gang's members engage in or have engaged in a pattern of criminal gang activity; and third, the willful promotion, furtherance, or assistance in any felonious criminal conduct by members of that gang." (*People v. Rodriguez* (2012) 55 Cal.4th 1125, 1130 (lead opn. of Corrigan, J.).) The enhancement provisions apply only to gang-related crimes, meaning offenses "committed for the benefit of, at the direction of, or in association with a criminal street gang." (§ 186.22, subd. (b)(1); accord, *People v. Livingston* (2012) 53 Cal.4th 1145, 1170.) The enhancements further require "the specific intent to promote, further, or assist in criminal conduct by gang members." (§ 186.22, subds. (b)(1), (4), (d).)

By enactment of Assembly Bill 333, section 186.22 has new requirements for establishing liability under subdivisions (a) and (b). (Stats. 2021, ch. 699, § 3.) As of January 1, 2022, predicate offenses must be shown to have "commonly benefited" the alleged gang, and the common benefit must have been "more than reputational." (§ 186.22, subd. (e)(1).) Currently charged offenses no longer qualify (*id*., subd. (e)(2)), and at least one predicate offense must have been committed "within three years of the date the current offense is alleged to have been committed …" (*id*., subd. (e)(1)). Among other additional changes, the terms "benefit," "promote," "further," and "assist" are now defined to mean providing "a common benefit to members of a gang where the common benefit is more than reputational." (*Id*., subd. (g).)

Assembly Bill 333's amendments to section 186.22 apply retroactively to cases not yet final as of the legislation's effective date. (*People v. Montano* (2022) 80 Cal.App.5th 82, 104; *People v. Ramos* (2022) 77 Cal.App.5th 1116, 1126; see *Tapia v. Superior Court* (1991) 53 Cal.3d 282, 301 ["statutes which redefine, to the benefit of defendants, conduct subject to criminal sanctions" are presumed to apply retroactively].) Where, as here, the defendant was convicted by jury under the old law, the potential

10.

grounds for reversal are instructional error and deficient proof of the required elements. Prejudice is evaluated under the standard of *Chapman v. California* (1967) 386 U.S. 18 (*Chapman*). (*People v. Delgado* (2022) 74 Cal.App.5th 1067, 1090; but see *People v. Lopez* (2021) 73 Cal.App.5th 327, 346 [concluding a harmless error analysis "would usurp the jury's role and violate [the defendant's] right to a jury trial on all the elements of the charged allegations"].) "Under that standard, the absence of instruction on the amended version of section 186.22 requires reversal unless 'it appears beyond a reasonable doubt that the error did not contribute to th[e] jury's verdict.'" (*People v. E.H.* (2022) 75 Cal.App.5th 467, 479.) However, even if there was inadequate proof of the new requirements of section 186.22, "the prosecution must be afforded the opportunity to establish the additional element[s] upon remand." (*People v. Eagle* (2016) 246 Cal.App.4th 275, 280; accord, *People v. Rodriguez* (2022) 75 Cal.App.5th 816, 822–823 & fn. 19.)

In *Sanchez*, which predates Assembly Bill 333, the California Supreme Court held that a gang expert cannot testify to "case-specific facts" asserted in hearsay statements unless such facts are within the expert's personal knowledge or independently supported by admissible evidence. (*Sanchez*, *supra*, 63 Cal.4th at pp. 676, 684–685.) At the time of defendant's trial and the parties' completion of the initial briefing on appeal, there was a split of authority on whether a gang expert's testimony about predicate offenses entails case-specific facts as contemplated by *Sanchez*. Our state Supreme Court resolved the issue in *People v. Valencia* (2021) 11 Cal.5th 818 (*Valencia*).

The *Valencia* opinion holds "that facts concerning particular events and participants alleged to have been involved in predicate offenses … constitute case-specific facts that must be proved by independently admissible evidence." (*Valencia*, *supra*, 11 Cal.5th at p. 839.) "[S]uch proof may not be established solely by the testimony of an expert who has no personal knowledge of facts otherwise necessary to satisfy the prosecution's burden." (*Id.* at p. 826.) A *Sanchez/Valencia* error is reviewed

11.

for prejudice under *People v. Watson* (1956) 46 Cal.2d 818 unless the improperly admitted hearsay was "testimonial within the meaning of the [United States Supreme Court's] confrontation clause jurisprudence." (*Valencia*, at p. 840.)

### C. Analysis

In their briefing on the *Sanchez* claim, the People contend the gang expert's opinion testimony was admissible because, although based on hearsay, he did not recite the hearsay but instead revealed in general terms that he had relied on hearsay. As noted, the respondent's brief was filed before *Valencia* was published. The *Valencia* opinion refutes the People's arguments.

Section 186.22 "requires proof that gang members committed at least two predicate offenses within the statutory timeframe. Such proof will generally require evidence of who committed the crime and when they did so, as well as evidence of their gang membership and the nature of the crimes." (*Valencia*, *supra*, 11 Cal.5th at p. 830.) The evidence of gang membership must show the predicate offenders "belong to the same gang that the defendant act[ed] to benefit." (*People v. Prunty* (2015) 62 Cal.4th 59, 76.) These "case-specific facts must be proven through the testimony of a witness with personal knowledge or by other admissible evidence." (*Valencia*, at p. 837.)

"[W]hen an expert's opinion is purely conclusory because unaccompanied by a reasoned explanation connecting the factual predicates to the ultimate conclusion, that opinion has no evidentiary value because an 'expert opinion is worth no more than the reasons upon which it rests.'" (*Jennings v. Palomar Pomerado Health Systems, Inc.* (2003) 114 Cal.App.4th 1108, 1117; accord, *People v. Prunty*, *supra*, 62 Cal.4th at p. 85.) "Experts with no personal knowledge of case-specific facts, or who do not rely on other admissible evidence establishing those facts, are simply 'regurgitat[ing] information from another source.'" (*Valencia*, *supra*, 11 Cal.5th at p. 838.) "A gang expert may still render an opinion regarding the gang membership of the perpetrator of a predicate

12.

offense in response to a proper hypothetical question based on premises established by competent evidence" (*id.* at p. 839), but that did not happen in this case. Therefore, defendant's objection to the expert's opinion testimony should have been sustained and the motion to strike it should have been granted.

In addition to the *Sanchez/Valencia* error, the predicate offenses evidence was deficient under the current law. Section 186.22 now requires the most recent predicate offense to have "occurred within three years of the prior offense *and within three years of the date the current offense is alleged to have been committed*." (*Id.*, subd. (e)(1), italics added.) The most recent predicate offense testified to by the gang expert was committed in January 2012, but the charged crimes in this case were committed in December 2015. Therefore, neither the 2010 offenses nor the 2012 offenses were qualifying predicates.

Furthermore, section 186.22 now requires that the predicate offenses "commonly benefited" the members of the alleged criminal street gang. (*Id.*, subd. (e)(1).) The common benefit must have been "more than reputational." (*Ibid.*) The gang expert did not opine, nor was there any other basis for the jury to conclude, the 2010 and 2012 offenses provided a common benefit to Norteño gang members. The People's failure to satisfy the three-year "washout" provision and the common benefit requirement are reversible errors. (See *People v. Vasquez* (2016) 247 Cal.App.4th 909, 922 ["'The existence of a criminal street gang is unquestionably an element of both the enhancement and the substantive offense'"].)

Defendant's claim regarding the common benefit requirement for the charged offenses is also well taken. As used in section 186.22, subdivisions (a) and (b), "to benefit, promote, further, or assist means to provide a common benefit to members of a gang where the common benefit is more than reputational. Examples of a common benefit that are more than reputational may include, but are not limited to, financial gain or motivation, retaliation, targeting a perceived or actual gang rival, or intimidation or silencing of a potential current or previous witness or informant." (*Id.*, subd. (g).)

13.

The People emphasize the "overwhelming" evidence of defendant's and codefendant Gonzalez's Norteño gang membership. However, as defendant argues, the issue is whether the jury would have found the charged crimes commonly benefited the gang's members had the necessary instructions been given. "[I]n order to prove harmless error under the *Chapman* standard, it is not enough to show that substantial or strong evidence existed to support a conviction under the correct instructions." (*People v. Sek* (2022) 74 Cal.App.5th 657, 668.) "Courts have found harmless error under this standard where the missing element from an instruction was uncontested or proved as a matter of law." (*Id.* at p. 669.)

The *Sek* case is on point. There, as here, the People argued harmless error because a gang expert had "testified about benefits to the gang that were not merely reputational." (*People v. Sek*, *supra*, 74 Cal.App.5th at p. 668.) The appellate court rejected the argument: "Although there was a great deal of evidence of benefits to the gang that went beyond reputational, we cannot rule out the possibility that the jury relied on reputational benefit to the gang as its basis for finding the enhancements true. Thus, the instructional error on this question was not harmless under the *Chapman* standard." (*Sek*, at p. 669.)

The People's harmless error argument is less persuasive here than in *People v. Sek* because the gang expert primarily relied on the supposed reputational benefits of the charged offenses. Moreover, as observed by the trial court, the evidence supporting the gang charges "was thin" even under the old law. It is not apparent, beyond a reasonable doubt, that the jury would have found defendant's crimes provided a common benefit to his fellow gang members.

## II. Sentencing Issues

### A. Prior Prison Term Enhancement

Effective January 1, 2020, the one-year enhancement provided for in section 667.5, subdivision (b) is inapplicable to all prior prison terms except those served for a

sexually violent offense within the meaning of Welfare and Institutions Code section 6600, subdivision (b). (Stats. 2019, ch. 590, § 1.) This amendment has been held to apply retroactively to nonfinal judgments. (E.g., *People v. Lopez* (2019) 42 Cal.App.5th 337, 341–342.) The recent enactment of section 1172.75 confirms the Legislature's intent for retroactive relief.[5] The new statute provides: "Any sentence enhancement that was imposed prior to January 1, 2020, pursuant to subdivision (b) of Section 667.5, except for any enhancement imposed for a prior conviction for a sexually violent offense as defined in subdivision (b) of Section 6600 of the Welfare and Institutions Code is legally invalid." (§ 1172.75, subd. (a).)

Defendant was alleged to have served one or more prior prison terms based on convictions of unlawful gang participation (§ 186.22, subd. (a)), unlawful possession of a firearm (§ 29800), and second degree burglary (§§ 459, 460). Because defendant's prior prison term(s) were not served for a sexually violent offense, the section 667.5 enhancements are invalid. Defendant may thus obtain relief on remand under section 1172.75 and the resentencing provisions therein.

## B.     Equal Protection Claim

"[S]ection 3051 provides that an offender who committed a 'controlling offense' as a youth is entitled to a 'youth offender parole hearing' after a fixed period of years set by statute. The 'controlling offense' is 'the offense or enhancement for which any sentencing court imposed the longest term of imprisonment.' [Citation.] [¶] As originally enacted, section 3051 applied only to non-LWOP offenses committed before the offender was 18 years old. (Stats. 2013, ch. 312, § 4.) An amendment effective January 1, 2016, raised the age of eligibility to 23 years; and an amendment effective

---

[5]This provision was originally codified as Penal Code section 1171.1. The Legislature later renumbered the provision without substantive change, effective June 30, 2022. (Stats. 2022, ch. 58, § 12.)

January 1, 2018, raised the age of eligibility to 25 years and included LWOP offenses committed before age 18. [Citations]." (*In re Jenson* (2018) 24 Cal.App.5th 266, 277.)

"Thus, section 3051 now provides that an offender who committed a 'controlling offense' under the age of 26 is entitled to a 'youth offender parole hearing' during his or her 15th year of incarceration if he received a determinate sentence; during his or her 20th year of incarceration if he or she received a life term of less than 25 years to life; and during his or her 25th year of incarceration if he or she received a term of 25 years to life. (§ 3051, subd. (b)(1)–(3).)" (*In re Jenson*, *supra*, 24 Cal.App.5th at p. 277.) However, the statute does not apply "to cases in which sentencing occurs pursuant to Section 1170.12, subdivisions (b) to (i), inclusive, of Section 667, or Section 667.61." (§ 3051, subd. (h).) In other words, section 3051 excludes defendants sentenced as second or third strike offenders under the Three Strikes law.

Cognizant of section 3051's exclusionary provisions, defendant's trial counsel filed a motion pursuant to *People v. Superior Court (Romero)* (1996) 13 Cal.4th 497 (*Romero*) asking the trial court to dismiss the prior strike allegation for purposes of sentencing. Defendant's prior strike had resulted from a conviction by plea bargain of unlawful gang participation under section 186.22, subdivision (a). As summarized in his appellate briefing, defendant's *Romero* motion "argued that his prior strike was of relatively minimal seriousness and that it should be stricken so that he could avail himself of the possibility of youthful offender eligibility in the distant future. He noted that he had already started his rehabilitation process by dropping out of the Norteño gang."

Defendant's *Romero* motion was denied. Because the ruling effectively precluded him from receiving a youth offender parole hearing (he was 20 years old when he committed the underlying offenses), defendant argues section 3051's exclusion of second strike offenders violates his constitutional equal protection rights. The same basic argument was rejected in *People v. Delgado* (2022) 78 Cal.App.5th 95, *People v. Moore* (2021) 68 Cal.App.5th 856, and *People v. Wilkes* (2020) 46 Cal.App.5th 1159. However,

16.

we need not take a position on the issue because defendant's sentence is being vacated and he will have the opportunity to make another *Romero* motion on remand.

When defendant's *Romero* motion was heard below, the judge said, "What's troubling to the Court about the *Romero* motion is that the strike involves gang activity, which is exactly what the jury found here." While this hardly means the motion would have been granted but for the gang verdicts, it does suggest the *possibility* of a different result on remand. We conclude the section 3051 claim is premature and thus decline to resolve it on the merits.

## DISPOSITION

The conviction of unlawful participation in a criminal street gang in violation of section 186.22, subdivision (a), and all enhancement allegations found true under subdivision (b) of the same statute, are reversed. The prior prison term enhancements imposed pursuant to section 667.5 are reversed. In all other respects, the judgment is affirmed. The sentence is vacated and the matter is remanded for further proceedings consistent with this opinion. Upon resentencing, the trial court shall prepare a new abstract of judgment and forward a copy to the Department of Corrections and Rehabilitation.

PENA, J.

WE CONCUR:


LEVY, Acting P. J.


FRANSON, J.

17.